MISSOURI PACIFIC RAILWAY COMPANY v. J. C. R. HAYNES & CO.

No. 2577.

1. **Liability of Common Carrier of Goods.**—Such liability continues from the commencement of the trip until the goods are delivered to the consignee at the point of destination. Rev. Stats., art. 281.

2. **Same—Delivery by Carrier.**—So long as possession remains with the carrier there can be no delivery, but in case of railway transportation the character in which the carrier holds after freight has been safely taken from its cars and deposited on platform or in warehouse may be affected by notice to the consignee of its arrival at its destination.

3. **Same—Statute on Subject.**—The statute (Rev. Stats., art. 282) provides: "If the carrier at the point of destination shall use due diligence to notify the consignee, and the goods are not taken by the consignee and have in consequence to be stored in the depots or warehouses of the common carriers, they shall thereafter only be liable as warehousemen." This indicates the duty of the carrier to use diligence to notify the consignee that the cars are at the place where they are to be unloaded. In absence of any effort to give such notice liability would continue.

4. **Same.**—Under the statutes in force in this State the liability of the carrier continues until the thing carried is actually delivered to the owner or consignee thereof at such place as the nature of the carriage requires the delivery to be made, or at some other that may be agreed upon, unless due diligence be used to notify the owner that it has arrived at its place of destination.

APPEAL from Hopkins. Tried below before Hon. J. A. P. Putman. The opinion states the case.

*Todd & Hudgins*, for appellant. — The court erred in its second conclusion of law in concluding that said cotton at the time of its destruction had never been delivered to plaintiffs or to the compress company, because the evidence and findings of fact show, first, that the cotton was delivered by said railway company at the place designated by plaintiffs and in accordance with instructions; and second, that the cotton was delivered to the compress company in the usual and only possible mode of delivery to said compress company, that is by delivery of the way bills and placing the cars containing the cotton on the side track at the platform of the compress company.

1. Under the facts as found by the court there was a complete delivery of the cotton and performance of the contract by appellant before the destruction of the cotton by fire.

(1) In its third finding of fact the court finds that "plaintiffs, J. C. R. Haynes & Co., were the real consignees of all said cotton and were so recognized and treated by all the parties to this action."

(2) In its seventh finding of fact the court finds that "the compress platform is not under the control of the railway company."

(3) In its eighth finding of fact the court finds that "about 1 o'clock p. m. of Monday, November 14, 1887, plaintiffs requested the agent of the railway company to have the cotton delivered at the compress platform, as they desired to have it checked, marked, and tagged, stating to the agent that Mr. R. C. Mattox of the compress company was at the platform ready to unload the cotton."

(4) In its tenth finding of fact the court finds that "on November 14, 1887, at 3:30 o'clock p. m. the railway company had the cars containing

plaintiffs' said 87 bales of cotton placed on the said side track and by the side of the compress platform."

(5) In its eleventh finding of fact the court finds that "at 4 o'clock p. m. on November 14, 1887, the cotton compress, its platform, the cotton thereon, and the cars containing plaintiffs' cotton, together with the plaintiffs' cotton thereon, were destroyed by fire. The evidence fails to show the origin of such fire."

These facts being true as found by the court, the delivery of the cotton by appellants to plaintiffs, the real consignees, was perfect and complete at least a half hour before the destruction by fire. Rev. Stats., arts, 278, 283; R. R. Co. v. Adams, 49 Texas, 759, 761; Mo. Pac. Ry. Co. v. C. & A. Ry. Co., 25 Fed. Rep., 317; Norway Plains Co. v. R. R. Co., 1 Gray, 263; Richardson v. Goddard, 23 How., 28; Hutch. on Car., secs. 364, 366–8, 370, 375–7, also 338, 342; 66 Ala., 167; 71 Ala., 215; 3 Wood's Ry. Law, secs. 435, 436, 441, 443, 444.

2. No notice of delivery of the cotton at the compress platform was required to be given by appellant either to the compress company or appellees.

(1) The court finds that appellees were the real consignees. There was therefore no privity between appellant and the compress company.

(2) The evidence shows, and there is no finding of fact by the court to the contrary, that the compress company received from appellant before the fire the way bills of the cotton, which was the customary mode of notice by the railway company to the compress company. These way bills were evidently burnt in the possession of the compress company.

(3) Appellees designated the place of immediate delivery and recognized their obligation to look out for and receive the cotton by making arrangements with the compress employes and instructing their own employee to be at the platform for that purpose. Appellant did everything in its power and everything required of it by appellees.

The concluding portion of the court's tenth finding of fact as to appellant's failure to notify appellees or the compress company *of the fact of delivery* is wholly irrelevant and immaterial. Richardson v. Goddard, 23 How., 28; Mo. Pac. Ry. Co. v. C. & A. Ry. Co., 25 Fed. Rep., 317.

3. Appellant's liability as common carrier ceased when appellees directed appellant what disposition to make of the cotton. Rev. Stats., arts. 278 and 282; Morgan v. Dibble, 29 Texas, 107; 1 Gray, 263; 3 Wood's Ry. Law, 451, notes 5 and 6; Wade on Notice, secs. 562 to 571; 66 Ala., 167; 71 Ala., 215.

*E. W. Terhune* and *Perkins, Gilbert & Perkins,* for appellee. —1. The carrier must give the consignee notice of the arrival of freight at the point of destination. McMillan v. M. S. & N. I. Ry., 16 Mich., 103;

Buckley v. G. W. Ry., 18 Mich., 126; Pinney v. St. P. & P. Ry., 19 Mich., 252; Derosia v. W. & H. Ry., 18 Minn., 137.

2. The responsibility of the carrier continues until that of some other person begins, and the burden is on the carrier to show the change. Chicago & R. I. Ry. v. Warren, 16 Ill., 505.

3. The carrier must unload the goods from the cars in due care and deposit them in a safe and suitable place in order to avoid liability. Porter v. Railway, 20 Ill., 407; C. & N. W. Ry. v. Bensley, 69 Ill., 630; A. & T. Ry. v. Kidd, 35 Ala., 218; Mich. Cent. Ry. v. Ward, 2 Mich., 540.

4. The usage or custom of a place can not dispense with notice of the arrival of goods or the carrier's duty to deliver them. Dean v. Vaccaro, 2 Head, 485.

5. Mere newspaper notice that the carrier will dispose of the goods in a certain way is not sufficient. The notice must be actual so as to give the consignee an opportunity to take the goods. Rome R. R. v. Sullivan, 14 Ga., 281.

6. When goods arrive at the destination and are destroyed after notice to the consignee, but before he has time to remove them by ordinary dispatch, the carrier is liable. Wood v. Crocker, 18 Wis., 365; Moses v. B. & M. Ry., 32 N. H., 532.

STAYTON, CHIEF JUSTICE. — This cause was tried without a jury, and the conclusions of fact, so far as necessary to be stated, are as follows:

"3. That on the 9th, 10th, and 11th days of November, 1887, the plaintiffs shipped from Black Jack Grove, Texas, and Campbell, Texas, to Greenville, Texas, through the defendant, Missouri Pacific Railway Company, 99 bales of cotton, and received regular bills of lading therefor, the haul being entirely within the State of Texas, and part of said cotton being consigned to plaintiffs at Greenville, Texas, and part to the defendant compress company, 'notify J. C. R. Haynes & Co.,' but that plaintiffs, J. C. R. Haynes & Co., were the real consignees of all of said cotton and were so recognized and treated by all the parties to this action."

"4. That 87 bales of said cotton were brought to Greenville, Texas, by defendant railway company, and had reached said point on the 11th and 12th days of November, 1887, and that plaintiffs learned of its arrival on Sunday, 13th day of November, 1887.

"5. That on Monday, 14th, 1887, the plaintiffs made arrangements with the compress company by which the latter agreed as a matter of accommodation to plaintiffs to unload said cotton on the compress platform when the same was ready for unloading, and check it off.

"6. That the cotton compress was situated in the city of Greenville not far from the track of the railway company, and that the latter had built a side track from its station and yard to and passing the platform of the compress company, which side track was owned and controlled by

the railway company and was built for the convenience of the railway company and the compress company.

"7. That early on the morning of November 14th, 1887, plaintiffs went to the depot of the railway company and demanded of the latter's agent the delivery of said cotton and requested him to have it placed on the compress platform. The agent replied that the cotton was in the yard, and as soon as the necessary switching could be done he would deliver the cotton. The compress platform is not under the control of the railway company.

"8. About 1 o'clock p. m. of Monday, November 14, 1887, plaintiffs requested the agent of the railway company to have the cotton delivered at the compress platform, as they desired to have it checked and marked and tagged, stating to the agent that Mr. R. C. Mattox of the compress company was at the platform and ready to unload the cotton, and the agent of the railway company replied that as soon as the necessary switching could be done he would place the cotton at the platform.

"9. That on said 14th day of November, 1887, the said R. C. Mattox was at the compress platform from 1 o'clock p. m. until after 4 o'clock p. m., and that at 2 o'clock p. m. and from 3 o'clock p. m. until after 4 o'clock p. m. plaintiffs had an employe at said platform waiting to sample and mark said cotton when it should be unloaded and placed on the platform.

"10. That on November 14th, 1887, at 3:30 o'clock p. m., the railway company had the three cars containing plaintiffs' said 87 bales of cotton placed on the side track and by the side of the compress platform, but failed to notify either the plaintiffs or the compress company, and neither plaintiffs nor any of their agents, nor the compress company or any of its agents, knew or were informed that the plaintiffs' cotton had been placed on said side track.

"11. That at 4 o'clock p. m. of November 14th, 1887, the cotton compress, its platform, the cotton thereon, and the cars containing plaintiffs' cotton, together with plaintiffs' cotton thereon, were destroyed by fire. The evidence fails to show the origin of such fire.

"12. The amount of cotton belonging to plaintiffs on said cars and so destroyed was 40,463 pounds, and was of the market value of $9\frac{1}{2}$ cents per pound, or the aggregate value of $3844.08.

"13. There was no custom as to delivery of cotton consigned to Greenville.

"14. In agreeing to receive and unload the cotton the compress company was acting in way of accommodation to plaintiffs and not for a consideration."

No objection is made to any of these findings other than the seventh, ninth, and tenth, but it is claimed that the evidence does not support them.

A careful examination of the evidence leads us to the conclusion that it sustains these findings, and a statement of the evidence would serve no useful purpose.

As conclusions of law the court found as follows: "2. That said cotton at the time of its destruction by fire had never been delivered to plaintiffs or to the compress company.

"3. That at the time of the destruction of said cotton the defendant Missouri Pacific Railway Company held said cotton as a common carrier and its liability as common carrier had not terminated.

"4. That in order to relieve itself of liability it devolved upon the defendant, the Missouri Pacific Railway Company, to establish by the proof that the loss of said cotton was occasioned by inevitable accident beyond the power of said defendant to guard against or avoid, and having failed to establish this the defendant Missouri Pacific Railway Company is liable to plaintiffs for the value of said cotton, to-wit, $3844.08, and interest thereon at the rate of 8 per cent per annum from the 14th day of November, A. D. 1887."

It is urged that the second and third conclusions of law are erroneous.

The evidence and the findings leave no doubt that the place of destination for appellees' cotton was the cotton compress in the city of Greenville, and appellant's liability as a common carrier continued from the commencement of the trip "until the cotton was *delivered* to the consignee at the point of destination." Rev. Stats., art. 281.

The evidence and findings preclude any holding that there was any agreement between appellant and appellees that the latter should have and assume possession of the cotton while on the cars, and in the absence of this it must be held that possession was in fact as in law with appellant, the cotton never having been removed from the cars and placed on the compress platform. The evidence shows that until this was done the right to possession and possession was at all times with appellant.

So long as possession remains with the carrier there can be no delivery; but in case of railway transportation the character in which the carrier holds after freight has been safely taken from its cars and deposited on platform or in warehouse may be affected by notice to the consignee of its arrival at destination.

There is a conflict of authority as to whether the extraordinary liability that attaches to the carrier continues after goods have been actually removed safely from cars and deposited in a safe place, unless notice be given to the consignee or owner; but the cases which hold that such liability ceases when the goods are unloaded and placed in a safe place do not claim exemption from the more onerous responsibility until the goods have been unloaded from the cars and deposited in a safe and suitable place. Hutchinson on Carriers, 371, and citations.

In Shaw v. Knox the Supreme Court of Massachusetts thus asserts the

rule: "A railroad company does not discharge itself of its duty as a carrier by merely bringing goods to the terminus of its road; it is bound to unload them with due care and put them in a place where they will be reasonably safe and free from injury. Until this is done the duty and responsibility which attach to a corporation as carrier do not close. Thomas v. Boston & Providence Railroad Co., 10 Metc., 472, 477; Norway Plains Co. v. Boston & Maine Railroad, 1 Gray, 263, 272. In the latter case * * * it is expressly stated that goods must not only be safely carried but also be discharged on the platform of a depot or put into a place of safety. 98 Mass., 214; Cahn v. Railroad Co., 71 Ill., 98."

The fact that appellees may have made arrangements with the compress to have that done which was incumbent on the carrier before there could be a delivery does not alter the situation of the parties nor their rights.

If the compress company, as the agent of appellees, had unloaded the cotton and placed it on the platform where appellees desired to have it, and where appellant was bound to place it before it could be relieved from responsibility as carrier, then the delivery would have been complete; but this was not done by either party, and the cotton was in the possession of appellant as carrier when destroyed by fire.

No agreement or usage is shown which could make anything short of an actual delivery operate to relieve appellant from its obligation as carrier.

If, however, there had been an agreement between the parties that appellees would receive the cotton on the cars and unload it themselves when the cars were placed at the destination, under the statute in force in this State we are of opinion that appellant would then be liable under the facts.

The statute provides that "if the carrier at the point of destination shall use due diligence to notify the consignee, and the goods are not taken by the consignee and have in consequence to be stored in the depots or warehouses of the common carriers, they shall thereafter only be liable as warehousemen." Rev. Stats., art. 282.

The spirit of this statute under such an agreement would require the carrier to use such diligence as the statute contemplates to notify the consignee that the cars were at the place where they were to be unloaded, and especially would this be necessary when the track leading to and by the compress platform was often occupied with cars not to be unloaded at the compress.

No effort was made to notify appellees or the compress company that the cars were on the side track ready to be unloaded. It was shown that this might have been done by the exercise of the slightest diligence.

If without direction to place the cotton on the platform of the compress company this had been done by appellant, then notice or due dili-

gence to give notice that it had been so placed would have been necessary before appellant would have been relieved from responsibility as carrier, unless as agent for appellees the compress company had received it. However the law may be elsewhere, under the statutes in force in this State the liability of the carrier continues until the thing carried is actually delivered to the owner or consignee at such place as the nature of the carriage requires the delivery to be made, or at some other that may be agreed upon, unless due diligence be used to notify the owner that it has arrived at place of destination.

After such notice has been given, or due diligence used to give it, if the thing be not received within a reasonable time the carrier may store it in a safe place, which in some cases and with some classes of property may be the car in which transported, and from the expiration of such reasonable time responsibility as carrier will cease and that of warehouseman begin.

There is no error in the judgment and it will be affirmed.

*Affirmed.*

Opinion November 30, 1888.