### GULF, COLORADO & SANTA FE RAILWAY COMPANY ET AL V. M. W. FOWLER.

Decided November 17, 1909.

**1.—Carrier—Warehouseman—Dangerous Goods—Delivery.**

A carload of dangerous goods (carboys of sulphuric. acid) placed by the railway upon its side track to be there unloaded by the consignee, was still in its possession as carrier; or if as a warehouseman only, its liability for injury caused to another by permitting the escape of the dangerous acid into the public street was substantially the same in that capacity.

**2.—Transporting Dangerous Goods—Negligence.**

A carrier transporting a dangerous substance, such as sulphuric acid, is charged with the duty of care to prevent injury to others by its escape proportionate to the danger.

**3.—Same—Case Stated.**

Where a car containing sulphuric acid in glass carboys was placed by a railway company upon its siding in a public street to be unloaded, and acid leaking therefrom, some of the receptacles being broken, ran out, forming a pool in the street by which a horse being driven through same was injured, the car not being in the meantime opened or disturbed, the facts, unexplained, warranted the inference that the acid was leaking when the car was placed there or the carboys broken in placing it there, and supported a finding of negligence.

**4.—Dangerous Goods—Notice to Carrier.**

Evidence considered and held to support a finding that a railway transporting a carload of sulphuric acid in glass receptacles had notice of the dangerous character of the property and was charged with the duty of care, proportionate to the danger, against permitting its escape from the car to the injury of others.

**5.—Evidence—Conditions Subsequent to Injury.**

Objections to evidence of conditions observed by witnesses on the ground where an injury took place several hours after its occurrence held to affect rather the weight of the evidence than its admissibility, and to have been properly overruled.

Error from the County Court of Tarrant County. Tried below before Hon. John L. Terrell.

*Terry, Cavin & Mills, Chas. K. Lee* and *Brown & Lomax,* for plaintiff in error.—The court erred in his first finding of fact to the effect, in substance, that the car containing the sulphuric acid on Seventeenth street in the city of Fort Worth on the date in question was in

the possession of the defendant railway company. Hutchinson on Carriers, sec. 105 et seq.; Yoakum v. Dryden, 26 S. W., 312; Railway Co. v. Hodde, 42 Texas, 467.

The court erred in its second and third conclusions of fact, wherein he finds respectively that the carboys containing sulphuric acid were broken and in a leaking condition at the time the car was placed by the railway company at the place in question, or else that they were broken by the servants of the railway company in placing the car in said position, and that in making no effort to prevent the acid leaking from the car and in making no effort to warn the public of the presence of the acid in the street, the railway company was guilty of negligence.

To charge the defendant with the responsibility of creating and maintaining a nuisance by reason of the presence of the acid in the street, it was necessary to show that the defendant had knowledge of the condition complained of, and there is a total failure to prove such knowledge. Ft. Worth & D. C. Ry. Co. v. Beauchamp, 95 Texas, 496; Collins v. G. S. Ry. Co., 16 So., 140.

There are no facts in evidence tending to show the railway company knew or ought to have known that these carboys contained acid or any dangerous liquid, nor that the railway company had ever received said carboys, or if it did, when, how or under what circumstances it received them, and there is, therefore, no support for a finding that the railway company failed to use ordinary care in handling the shipment or that as a result of its failure to use such care the horse was damaged.

The court erred in rendering judgment for the plaintiff in this case against the defendant railway company because the evidence is wholly insufficient to establish any negligence or liability on its part for the injury to the plaintiff's horse. Missouri Pac. Ry. Co. v. Porter, 73 Texas, 307; Missouri, K. & T. Ry. Co. v. Thompson, 11 Texas Civ. App., 658; United States v. Ross, 92 U. S., 707; Monning v. Insurance Co., 100 U. S., 761; Missouri, K. & T. Ry. Co. v. Wilder, 53 S. W., 492.

*R. M. Rowland,* for defendant in error.—The evidence warranted the finding of the court that at the time of the injury to the animal the car containing the carboys of acid was in the possession of defendant railway company. Missouri Pac. Ry. Co. v. Haynes, 72 Texas, 175.

The trial court's fourth and fifth findings of fact and his fourth and fifth conclusions of law, holding defendant guilty of creating or maintaining an actionable nuisance, are fully sustained by the evidence in the record and the law applicable thereto. Ft. Worth & D. C. Ry. Co. v. Beauchamp, 95 Texas, 496; Waller v. Ross (Minn.), 64 Cent. Law Jour., 175; Missouri, K. & T. Ry. Co. v. Wood, 95 Texas, 223; Malloy v. Storin, 16 L. R. A. (N. S.), 445.

The findings and conclusions complained of are warranted by the facts in the record. 1 Elliott on Evidence, sec. 64; 2 Hutchinson on Carriers, secs. 685, 795; Moore on Carriers, 100; 1 Thompson on Neg., sec. 833; Standard Oil Co. v. Wakefield (Va.), 66 L. R. A., 792; Citizens' Telephone Co. v. Thomas, 45 Texas Civ. App., 20; Sipple v. Laclede Gaslight Co. (Mo.), 102 S. W., 608; 1 Thompson on Neg.,

secs. 718-721, 849-851, 812; 2 Hutchinson on Carriers, sec. 714, note; 4 Thompson on Neg., sec. 4123.

The evidence clearly established defendant's liability, and the court properly rendered judgment against it. See authorities hereinbefore cited; also Pollock's Law of Torts (3d ed.), p. 61.

RICE, Associate Justice.—Appellee brought this suit in the Justice Court against the Gulf, Colorado & Santa Fe Railway Company, the Kindel-Clark Drug Company and W. J. Binyon, Jr., to recover damages to his mare alleged to have been caused by the negligence of said defendants in allowing sulphuric acid to escape from a car of appellant, forming a puddle in the public street through which plaintiff's mare was driven by his son, and into which she stepped, severely burning and injuring her feet.

Appellee recovered in the Justice's Court, from which an appeal was taken to the County Court, where a trial was had before the court without a jury and judgment rendered in favor of appellee against the railway company, which alone appeals in this case, the other two defendants being acquitted of negligence, and judgment rendered in their favor.

The court filed its conclusions of fact and law, and the evidence, in our opinion, supports the same. From the evidence it appears that on the morning of the 16th of April, 1907, while appellee's son was driving the animal in question along one of the public streets of the city of Ft. Worth, it stepped into a puddle of sulphuric acid which had escaped into the middle of the street from a carload of drugs that had been left standing on the sidetrack near the premises of said drug company for the purpose of delivery to it. It is not definitely shown how long the car had been standing upon this sidetrack or switch, but the accident occurred about seven o'clock in the morning, and there is evidence to the effect that the car was not there the preceding evening. It appears that the car, among its other contents, contained a number of carboys of sulphuric acid, two at least of which had been broken, from which the contents escaped, forming a puddle in the middle of the street. There was nothing to show any contributory negligence on the part of the driver of the animal.

The trial court found as a fact that the car was in the possession of the company at the time of the accident, and that one or more of said carboys containing said acid was broken and in a leaking condition at the time the car was placed by the railway company on the switch, or else that one of said carboys was broken by the servants of said company while in the act of placing said car at said point, and that no effort was made to guard said car nor to prevent the acid from leaking and escaping into the street, nor any efforts made, by signs or otherwise, to warn the public of the presence of said acid in said street, finding that the acts of said railway company in the premises constituted negligence. And the court further found as a fact that said leaking carboys of acid constituted a nuisance, threatening injury to persons and animals using said street, for which said company was responsible. The court further found that sulphuric acid is a dangerous substance, calling for care and diligence in handling, liable to do in-

jury if allowed to escape, and that the nature of the receptacles, called carboys, in which the acid was contained, indicated the character of its contents, and that appellant knew, or ought to have known, at the time it first received the same, that it contained sulphuric acid, or some other dangerous liquid, which would do harm if allowed to escape. The court further found that the negligence of the appellant was the proximate cause of the injury; that neither the drug company, nor Binyon the drayman, who had gone there for the purpose of unloading the car, had anything to do with causing the escape of said acid.

The court as a conclusion of law found that a common carrier who knows, or has reason to suspect, the dangerous character of the goods entrusted to it for transportation, is bound to exercise that degree of care in carrying the same which is proportionate to the danger assumed, and that appellant failed, in handling this car, to discharge the duty so imposed upon it; wherefore it was guilty of negligence in law and was responsible to the plaintiff for the consequences of such negligence. The court further found, as a conclusion of law, that the railway company did not use ordinary care for the protection of others in the handling of this shipment of acid, which was a dangerous agency, and that the injuries resulting to plaintiff's mare were directly caused by such want of ordinary care upon the part of said company, wherefore it was liable in damages to plaintiff. The court further found, as matter of law, that the appellant was guilty of maintaining a nuisance by allowing the leaking car thus to stand on its sidetrack near the street, thereby rendering it liable for damages to any citizen whose property might receive special injury therefrom while in the lawful use of the street.

Appellant by its first assignment of error complains of the court's finding to the effect that the car containing the acid, after being left on the sidetrack for the delivery of the goods to the drug company, was in possession of appellant. We think it is clearly shown by the evidence that the car in question belonged to appellant, and was upon its sidetrack, and at the time of the accident had not been received by the drug company. In the event of loss or injury to its contents, we think the appellant would have been held liable to the owner therefor (See Missouri Pac. Ry. Co. v. Haynes, 72 Texas, 175); and of course, therefore, in its possession and control. But even if the evidence, as contended by appellant, was sufficient to show that its duty as carrier had ceased and that of warehouseman had begun, still, we do not believe that it would have made any material difference as to its liability to plaintiff for the injury sustained under the peculiar circumstances of this case, because even then it would have been compelled to exercise ordinary care in guarding said shipment, so as to prevent the escape of the acid into the street, from which injury might have resulted to others.

By its second assignment appellant urges that the court erred in its second and third conclusions of fact, in holding that the carboys containing sulphuric acid were broken and in a leaky condition at the time the car was placed by the railway company on the switch, or else that they were broken by the servants of the railway company in placing the car in said position; and further, in making no effort to pre-

vent the acid's leaking from the car, and in making no effort to warn the public of the presence of the same in the street, that said company was guilty of negligence. While there was no positive evidence that the carboys containing the acid were broken and the car in a leaking condition at the time it was placed on the switch, nor none going to show that it was broken by the acts of its servants while placing the car in said position, still, we think that the evidence compelled this finding, because if the carboys containing the acid had been broken and leaking when the shipment started or while in transit, it very likely would have emptied itself en route. There was no evidence showing or tending to show any trace of the acid on the ground before the car reached this point; nor was there any evidence going to show that anybody had interfered in any way with this car while standing at this point. Neither the drug company nor the drayman had opened the car at the time of the injury, and there was no evidence on the part of the railway company to explain this leakage of the acid from the car, nor anything showing or tending to show when it began to leak or how the carboys containing the acid came to be broken; so that we must conclude from the circumstances, as did the court below, that either the car was leaking at the time it was placed there, or else that the carboys were broken by the servants of the company while placing the car at the point where it was left, and, in either event, the company would have been liable to the owners for the loss of the acid.

But the third and fourth assignments of error present, in our judgment, the most serious questions in this case, and are as follows: By its third assignment appellant insists that the court erred in its findings of fact and conclusions of law, finding, in effect, that by reason of the fact that the acid leaked from the car and stood in the street, that the defendant company was responsible for the creation and maintenance of a nuisance. And by its fourth assignment it is urged on the part of appellant that the court erred in its conclusions of fact and law, which found in effect that carboys, such as contained this sulphuric acid, were ordinarily employed for the handling and transportation of strong and dangerous acids, and that from the nature of the receptacles in which the acid was contained and carried the character of the contents was indicated, and that the railway company knew, or ought to have known, at the time it first received said carboys, that they contained acid or some other dangerous liquid; and that the railway company did not use ordinary care in the handling of this shipment, and that the injury to the plaintiff's mare was directly caused by the failure of the railway company to exercise such care.

If the court was correct in finding in favor of appellee against appellant, either on the ground of nuisance or on the ground of failing to exercise ordinary care in receipt and transportation of the car containing the acid, then, in either event, the judgment ought to be sustained. The evidence discloses that the carboys mentioned containing the acid were receptacles made of glass in the shape of large jugs or demijohns, and the court found that these were such as were ordinarily employed for the handling and transportation of strong and dangerous acids. It is possibly true that the evidence did not sustain the latter finding, to the effect that dangerous acids were commonly shipped in

carboys of this kind, but it is insisted by appellee that courts will take judicial cognizance of such matters as are of common knowledge, citing volume 6, Thompson on Negligence, secs. 7629, 7630, and Elliott on Evidence, sec. 64, and that it is a matter of common knowledge that acids are shipped in such receptacles as the ones described by the evidence. But, without resting our conclusion on this finding, and irrespective of whether the court would take judicial cognizance of what a carboy is, we are inclined to believe that the court's finding against the appellant on the question of negligence is well founded. While it is true that a railroad company, ordinarily, is not required to acquaint itself with the character of its shipments, nor ordinarily has it the right to know or demand from the shipper the character of the article proffered for shipment (see 5 Thompson on Neg., sec. 6593; 2 Hutch. on Car., sec. 759), still there are well-established exceptions to this general rule in respect to such goods as are known to be dangerous in transportation to the person or property of others; and when such goods of this character are so offered to the carrier, it has been held to be the duty of the shipper to make known their dangerous qualities, and it would be an imposition on the carrier not to do so; and in such cases it would seem to be the right on the part of the carrier to refuse to carry goods when their dangerous character is either clearly apparent or when the same excites the suspicion of the carrier. (Hutch. on Car., vol. 2, sec. 796.)

In Elliott on Railways, vol. 4, sec. 1466, it is said that railways have the right to refuse to carry dangerous goods, or such as they may believe to be so.

In Moore on Carriers, sec. 5, p. 100, it is said: "It may lawfully refuse to receive or carry goods of an explosive or dangerous character, such as dynamite, nitro-glycerine, vitriol, etc., or goods which the law prohibits it from carrying, such as intoxicating liquors. It has a right to demand an examination and to be made acquainted with the contents of packages where there is reasonable ground for believing they are of a dangerous character. But, in the absence of reasonable grounds for suspecting them to be of a dangerous character, it can not compel the owner or person offering them for shipment to disclose their nature." Certainly, ordinary care at least should be taken after the receipt of such dangerous articles by a common carrier, to the end that the same may be safely transported without injury to its employees or others who may come in close proximity to the same, and such care must be proportionate to the danger incident to the handling of the article in question. On this subject it is said in volume 1, sec. 759, Thompson on Negligence, that "One court has reasoned that the danger to be apprehended by the indiscriminate handling of highly explosive substances—in the particular case detonating caps—is so great and obvious that a *high degree of care* should be exercised to prevent them from falling into the hands of strangers. But this is only another mode of stating that the care and caution to be applied in guarding dangerous substances is a degree of care and caution proportionate to the danger to others from coming into contact with them. Another court has applied to the same subject the standard of *ordinary care and*

*skill,* by holding that the owner of premises is liable for damages to the personal property of a bare licensee upon the premises, for an explosion of dynamite stored thereon, due to his want of ordinary care and skill in the management of the same. Another court has correctly expressed the rule by holding that one who handles or carries dangerous explosives, or keeps them on his premises, though not *per se* answerable for all injurious consequences which may proceed from them, regardless of the degree of care and vigilance he may exercise concerning them, must use such care and prudence in guarding them as prudent and careful persons whose business it is to deal in such articles ordinarily exercise, which is greater than that required with respect to articles not commonly considered dangerous." Citing Henry v. Cleveland, etc., R. Co., 67 Fed., 426.

Justice Williams, in the case of Ft. Worth & D. C. R. R. Co. v. Beauchamp, 95 Texas, 496, held, as shown by the syllabus, that "where a railroad company, by failing to use ordinary care, allows a car of explosives to be unnecessarily or unreasonably delayed at a station, or fails to use ordinary care in keeping or caring for such car, it creates a nuisance rendering the company liable for damages resulting to adjacent property from an explosion thereof. And further, that where there is evidence in an action against a railroad for damages resulting from explosion of a car of explosives that the company was negligent in allowing the car to be delayed, or in failing to properly guard it, the question of the negligence of the company in such respects is for the jury."

In the case of Farmers' Loan & Trust Co. v. Oregon Railway & Nav. Co., 73 Fed., 1003, where, after the plaintiff's goods were in the depot of the railway company, being held as warehouseman, a drayman brought a carboy of sulphuric acid to the depot for shipment, and unloaded it there, all the defendant's employes about the depot at the time it was left by the drayman, being engrossed in other duties, failed to take notice of the fact that the drayman had left said carboy of acid, notwithstanding the company had rules forbidding acids of such character to be placed inside of its depot, said acid being deposited upon a floor saturated with oil, in consequence of a leak in the carboy an explosion occurred, setting fire to the depot, destroying plaintiff's goods, it was held that the company was negligent in failing to exercise a reasonable supervision over the articles in its depot and the care of its building where its patrons' property was stored, and was therefore liable to plaintiff for the value of the goods so destroyed.

We think the evidence in this case justified the court in finding that the appellant, at the time of the receipt of the carboys of acid, had notice of the dangerous character and quality of their contents; and, irrespective of whether it had or did not have the right, on account thereof, to refuse to receive said shipment, it certainly, after receiving the same, became charged with the duty of exercising reasonable care in transporting the same, and that the degree of care so exercised would necessarily increase in proportion to the dangerous character of the shipment, and that this duty did not cease until after its delivery to the consignee. And that the court was also justified in finding from the evidence that appellant was guilty of the want of such ordinary

care in such transportation, by reason of which 'failure said carboys were broken and the acid allowed to escape from its cars and flow into the street, occasioning the damage complained of. We therefore overrule these assignments.

The fifth assignment of error questions the correctness of the ruling of the court in permitting plaintiff's witnesses Fowler, Erwin and McKinney, to testify over its objection as to the result of investigation made and facts ascertained several hours after the injuries are alleged to have occurred, on the ground that said evidence was immaterial and irrelevant, and because there was nothing to show that at the time said investigation was made that the same conditions existed as when the injury occurred. We think this objection goes more to the weight of the evidence than to its competency, and hence the same is not well taken, and this assignment will be overruled.

Believing no reversible error is shown, the judgment of the court below is in all things affirmed.

*Affirmed.*