MISSOURI IRON & METAL CO. v. TEXAS & P. RY. CO. (No. 8710.)

(Court of Civil Appeals of Texas. Ft. Worth. Oct. 13, 1917. Rehearing Denied Nov. 10, 1917.)

1. CARRIERS ⬦➔93—CARRIAGE OF GOODS—LIABILITY.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 710, requiring carriers to deliver goods as provided by common law, etc., a carrier is liable for a misdelivery made in good faith and without negligence, unless the error was caused by the consignor.

2. CARRIERS ⬦➔94(3)—CARRIAGE OF GOODS—BURDEN OF PROOF.

In a consignor's action for misdelivery, defendant carrier had burden of showing that individual to whom delivery was made was either a partner or agent of the consignee partnership.

3. CARRIERS ⬦➔94(3)—CARRIAGE OF GOODS—SUFFICIENCY OF EVIDENCE.

In a consignor's action for misdelivery, evidence that the person to whom delivery was

made acted for the consignee partnership in transactions with the consignor, etc., *held* prima facie proof of such person's authority to receive the goods, and authorized a directed verdict for defendant carrier, in absence of rebutting testimony.

Appeal from Tarrant County Court; Charles T. Prewitt, Judge.

Suit by the Missouri Iron & Metal Company against the Texas & Pacific Railway Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Slay, Simon & Smith, of Ft. Worth, for appellant. Thompson, Barwise & Wharton and George Thompson, Jr., all of Ft. Worth, for appellee.

BUCK, J. This suit was filed in the county court of Tarrant county for civil cases by appellants, the Missouri Iron & Metal Company, a firm composed of M. Ginsburg and L. Cohen, against appellee, the Texas & Pacific Railway Company. Appellants alleged that on February 17, 1913, they delivered to appellee at Ft. Worth, Texas, 17 bundles of old automobile tires, weighing 2,379 pounds, consigned to the Double Strength Relining Company, Dallas, Tex., and that appellee delivered to appellants its bill of lading for same. That appellee had never delivered said goods to the consignee, or to appellants, but had converted same, and that their market value was $286.48. In its answer appellee admitted the receipt of said goods for shipment and the execution of the bill of lading, which it alleged to be a straight, open bill of lading, and further alleged that it delivered said goods to one R. H. Caperton, who was alleged to be a member of the firm of the Double Strength Relining Company, and that he receipted for same as "R. H. Caperton, manager." In another paragraph, it alleged that said Caperton at the time of said delivery was the agent of the Double Strength Relining Company, duly authorized to receive said shipment and having apparent authority to receive it. Appellants denied that said Caperton was a partner or a member of the Double Strength Relining Company, or that he was in any way connected with said company, or had any authority, as manager or otherwise, to receipt for said shipment, or that appellee was authorized to deliver said shipment to him. Testimony was introduced on the trial, and at the close of the evidence the court peremptorily instructed a verdict for the defendant and entered judgment on said verdict. The plaintiffs have appealed.

In order to determine the correctness vel non of the court's action, it will be necessary for us to review the state of the evidence and see if the parties litigant, respectively, met the burden of proof resting upon them. The evidence shows: (1) A delivery to the railway company by the plaintiffs of the goods in question. (2) A delivery by the railway company to R. H. Caperton, who signed the expense bill, "R. H. Caperton, manager." (3) That Caperton was the agent of the Double Strength Relining Company at least for the purpose of purchasing the goods in this shipment, and that Caperton bought the goods for the consignee, and agreed with the consignor as to the price, time of shipment, etc. (4) That he had bought a previous shipment of old tires, and it had been paid for. (5) That a draft was drawn on the consignee by the consignor, Caperton filling out the draft for Ginsburg, who signed it. That the draft was sent either through a Ft. Worth bank or directly by mail, and that the draft was returned unpaid. (6) That this was an open shipment, i. e., it did not require the presentation and surrender of the bill of lading in order to secure the delivery of the goods. (7) That a Mr. Murray "ran the Double Strength Relining Company," or "was the Double Strength Relining Company." (8) Mr. Ginsburg testified in several places in his testimony that Caperton was the agent for the consignee company, but no effort was made in the testimony to define or limit the scope of Caperton's agency. (9) That Caperton on January 8, 1913, about a month before this shipment, drew a draft for $6.16 on the Double Strength Relining Company, which was paid.

[1] We believe the above to be a fair statement of the substance of the testimony. Caperton did not testify, nor did Mr. Murray or any one else representing or connected with the Double Strength Relining Company, nor was there any positive evidence as to the character of such company, whether it was an individual firm or corporation, or what relation Caperton bore to it, except, as before stated, Ginsburg testified that Caperton was the agent of the company. Under article 710, Vernon's Sayles' Texas Civil Statutes:

"Common carriers are required, when they receive goods for transportation, to give to the shipper, when demanded, a bill of lading or memorandum in writing, stating the quantity, character, order and condition of the goods, and such goods shall be delivered in the manner provided by common law, in like order and condition, to consignee, subject to ordinary wear and tear and deterioration in due course of transportation"

—and if said common carrier shall fail to deliver the goods as above required, it shall be liable to the party injured for his damages as at common law. If the carrier deliver the goods to one other than the consignee, or his duly authorized agent, and said goods are lost or injured thereby, the carrier is responsible, even though said delivery was made to a person whom the carrier in good faith, but erroneously, believed to be duly authorized by the consignee to accept and receipt for the goods. Of course this statement of the law is subject to the exception, that if the mistake in the delivery was caused or induced by the act of commission or omission of the consignor, himself, the carrier would

be relieved from liability because of said mistake. But it is not a question as to whether or not the carrier exercised due care in the delivery, and the carrier makes a delivery to any person other than the consignor or his duly authorized agent at its peril. As is said in Fielder v. M., K. & T. Ry. Co., 92 Tex. 176, 179, 46 S. W. 633, 634:

"The relation of consignee and carrier begins when the goods are received to be carried, and ends only when they are delivered or stored at the point of delivery under such circumstances as to constitute the liability of the carrier that of a warehouseman only. And so as a rule, the contract of the carrier is not performed until he has delivered the freight to the consignee."

As is said by Chief Justice Stayton in M. P. Ry. Co. v. Haynes & Co., 72 Tex. 175, 182, 10 S. W. 398, 401:

"However the law may be elsewhere, under the statutes in force in this state the liability of the carrier continues until the thing carried is actually delivered to the owner or consignee at such place as the nature of the carriage requires the delivery to be made."

See, also, H. & T. C. Ry. Co. v. Adams, 49 Tex. 748, 30 Am. Rep. 116; 10 C. J., p. 264, sections 378 and 379; 4 R. C. L., p. 838, section 291 et seq.

[2, 3] It having been shown in the evidence that the delivery was made to Caperton, we think the burden of proof rested upon the railway company to show that said Caperton was either a partner in the Double Strength Relining Company, or its agent duly authorized to receive the goods, or generally authorized to transact business for said company. The question is, Has it discharged that burden? We hold that it has made a prima facie showing of the requisite authority in Caperton to receive the goods.

It will be recalled that the evidence shows that Caperton had bought for the Double Strength Relining Company a former shipment of old tires, and that said shipment was duly paid for; that he carried on all the negotiations leading up to the purchase and shipment of the consignment in question; that at one time he drew a draft on the Double Strength Relining Company, which was duly paid; that Ginsburg testified that Mr. Caperton acted as agent for the Double Strength Relining Company in the first shipment, and that, "he acted the same as last time." He further stated as follows:

"Yes; I stated a while ago that previous to that, before I sold this shipment to Mr. Caperton, that I sold another shipment to Mr. Caperton, and that the Double Strength Relining Company when I sent in the draft paid it, and I got my money. Yes; before this transaction took place between me and Mr. Caperton, I had had another dealing with Mr. Caperton, but he always presented the same name, Double Strength Relining Company. Yes; he told me he was agent for the Double Strength Relining Company; that is what he said. Yes; me and him made the price. Yes; he told me how much he would give for the tires, I told him how much I would take, and we agreed

about it. Yes; he represented on the one hand the Double Strength Relining Company, and I, on the other hand, represented the Missouri Iron & Metal Company."

In the absence of any evidence tending to overturn the prima facie showing of Caperton's agency for the purpose of receiving the goods, and in the absence of any evidence even tending to show that the Double Strength Relining Company did not in fact receive the goods receipted for by Caperton, we are of the opinion that the trial court was justified in giving the peremptory instruction, and the judgment is therefore affirmed.