### PANHANDLE & S. F. RY. CO. et al. v. CRAWFORD. (No. 1229.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 31, 1917. On Motion for Rehearing, Dec. 5, 1917.)

1. TRIAL ☞352(1)—CARRIAGE OF LIVE STOCK —SPECIAL ISSUES—"REASONABLE TIME."

In an action for damages to a shipment of cattle through delay in transit, where the court, in its main charge, in connection with the submission of special issues, instructed that the duty of defendant roads in regard to the cattle was to use ordinary care in loading, forwarding, and transporting them, etc., the special issues whether defendants transported the cattle within a reasonable time after they were received by defendants for transportation were not erroneous as imposing an absolute duty on the roads to transport the shipment within a reasonable time; it being reasonably clear from the other instructions that the term "reasonable time"

in the special issues meant such time as that in which the railroads in the exercise of ordinary care should have completed the transportation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reasonable Time.]

2. TRIAL ⬡⟾352(5)—CARRIAGE OF LIVE STOCK—SPECIAL ISSUES.

In such action, where the court charged that issues should not be considered unless it should first be found under the special issues submitted that the cattle were not transported within a reasonable time, the submission of such issues, as whether the cattle lost any more in weight than they would have lost had they been transported and delivered within a reasonable time, was not erroneous on the ground that the issues assumed the cattle were not transported within a reasonable time.

3. CARRIERS ⬡⟾210 — CARRIAGE OF LIVE STOCK—DUTY TO FURNISH FACILITIES FOR UNLOADING—INTERSTATE COMMERCE ACT.

Under Interstate Commerce Act Feb. 4, 1887, c. 104, § 1 (2), 24 Stat. 379 (U. S. Comp. St. 1916, § 8563[2]), the duty of railroads carrying cattle to furnish the facilities necessary for unloading and delivering them is nondelegable, and if agents are employed to perform it the liability remains the same.

4. APPEAL AND ERROR ⬡⟾909(1)—CARRIAGE OF LIVE STOCK—ASSUMPTION OF MATTER OF FACT IN ABSENCE OF EVIDENCE.

In an action for damage to a shipment of cattle from delay in transit, in the absence of evidence to show that delivery of the cattle was accepted by the consignee on the cars at destination and that the stockyards company acted for the consignee in unloading, the Court of Civil Appeals cannot assume that the stockyards company in unloading was not performing one of the duties of transportation incumbent on the carriers.

5. CARRIERS ⬡⟾230(8)—CARRIAGE OF LIVE STOCK—INSTRUCTION.

In an action for damage to a shipment of cattle from delay in transit, the charge that the responsibility of the railway company ceased when the cattle were delivered to the stockyards company at destination and unloaded into its pens was as favorable as defendant railroads could ask, in the absence of evidence to show that delivery was accepted by the consignee on the cars at destination, and that the stockyards company acted for the consignee in unloading the shipment.

6. TRIAL ⬡⟾252(7) — INSTRUCTION — EVIDENCE.

The evidence and issues submitted having no reference to any depreciation caused by an extraordinary run of cattle and the crowded conditions of the pens at destination, an instruction that the jury should not consider any damage resulting on account of an unusual run and such crowded conditions was properly refused.

Appeal from District Court, Hale County; R. C. Joiner, Judge.

Action by J. P. Crawford against the Panhandle & Santa Fé Railway Company and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Terry, Cavin & Mills, of Galveston, Madden, Trulove, Ryburn & Pipkin, of Amarillo, and L. R. Pearson, of Plainview, for appellants. Mathes & Williams, of Plainview, for appellee.

BOYCE, J. Appellee, Crawford, recovered damages in the court below against appellant railway companies, for negligent delay in the shipment of 562 head of cattle belonging to appellee, shipped from Plainview, Tex., to Kansas City.

[1] The case was submitted on special issues, the first issue being as follows:

"Did the defendants transport plaintiff's cattle to and deliver them at Kansas City within a reasonable time after said cattle were received by defendants for such transportation?"

Following this issue, successive issues were submitted requiring the jury to determine and answer as to the loss in weight and market value per pound of the cattle in excess of what it would have been if they had been transported and delivered at Kansas City within a reasonable time. The appellants assign error as to this manner of the submission of the issues of liability, because the true basis of liability would be whether the carrier exercised ordinary care to transport the cattle within a reasonable time, and, as they assert, the effect of the charge was to impose an absolute duty upon them to transport the shipment within a reasonable time and made the carriers liable, irrespective of any negligence. The court, in its main charge, in connection with the submission of the special issues, instructed the jury that the duty of the defendants in regard to plaintiff's cattle was to use ordinary care in loading, forwarding, and transporting them; that defendants were not required to transport the cattle on any particular train, nor deliver them in time for any particular market, and, unless the jury should find that defendants did not use ordinary care to load or transport the cattle within a reasonable time, the first special issue should be answered in the affirmative. The court also gave several instructions requested by the defendant in respect to the specific delays charged, to wit, a delay in loading, a delay at feeding point en route, and a delay caused by engine failure, in which the jury were specifically charged as to appellant's theory of its liability for such acts. At the request of the appellants, the court also submitted two special issues: First, as to whether there was a negligent delay in the loading of the cattle at Plainview; to which the jury replied that there was such delay of 5 hours and 40 minutes. And, second, whether there was a negligent delay at the feeding point en route; to which the jury replied that there was such delay of six hours. It appears reasonably clear from these instructions that the court, by the use of the term "reasonable time," meant such time as that in which the railway companies, in the exercise of ordinary care, should have completed the transportation, and the jury evidently so understood it. We therefore overrule the first and second assignments.

---

[2] The court submitted several issues, of which the following is a fair illustration:

"Did plaintiff's cattle lose any more in weight than they would have lost in weight if they had been transported to and delivered at Kansas City within a reasonable time after they were received by defendant for such transportation?"

The appellants objected to the submission of these issues on the ground that it was assumed therein that the cattle were not transported within a reasonable time. The submission of these issues was preceded by an instruction that they should not be considered unless it should be first found under the first issue submitted that the cattle were not transported within a reasonable time. Under such circumstances, we did not think there was any error in this manner of submitting these issues.

The record shows that the stock pens, including the unloading chutes at Kansas City, are owned and operated by the Kansas City Stockyards Company, an independent corporation; that upon arrival of stock at Kansas City the railway company places the cars at the unloading chutes, and the stockyards company unloads the cattle in small pens, and where they are consigned to a commission company selling cattle on the Kansas City market, as the cattle in this shipment were, the stockyards company delivers these cattle from these unloading pens into the respective pens used by the commission company, which pens are also owned by the stockyards company. It is also shown that this has been the custom of handling cattle consigned to commission firms at Kansas City for many years, though the record is silent as to who pays the stockyards company for these services. The evidence shows that the cars containing these cattle were placed by the railway company at the stockyards at 4:15 a. m., and they were all unloaded by 7:15 a. m. The court, at appellants' request, instructed the jury:

"That the duty of the defendant railway companies ceased when they delivered plaintiff's cattle to the Kansas City Stockyards Company, and said cattle were unloaded into the pens of the Kansas City Stockyards at Kansas City, Mo."

Appellants complain of the action of the court in refusing to instruct the jury that the liability of defendants ceased when they delivered the cattle at the unloading chutes, and any delay in unloading the cattle from the cars at Kansas City should not be charged to the defendants. The duty of the railway company to make delivery of the shipment at Kansas City, and in order to do this furnish the facilities necessary for the unloading and delivery of the cattle, is a part of the "transportation" of an interstate shipment under section 1 (2) of the Interstate Commerce Act, which provides that:

"The term 'transportation' shall include cars and other vehicles and all instrumentalities and facilities of shipment or carriage, irrespective of ownership, or of any contract, express or implied, for the use thereof and all services in connection with the receipt, delivery, elevation, and transfer in transit, ventilation, refrigeration or icing, storage, and the handling of property transported."

[3] This duty is nondelegable, and, if other agents are employed by the carrier to perform it, the liability would remain the same. Section 1, Interstate Commerce Act; section 8563 (2), West Publishing Company's Compiled Statutes of the U. S., vol. 8, p. 9061; Covington Stockyards Co. v. Keith, 139 U. S. 128, 11 Sup. Ct. 461, 35 L. Ed. 73; Mo. Pac. Ry. Co. v. Haynes, 72 Tex. 175, 10 S. W. 398; Hutchinson on Carriers, § 510; Panhandle & Santa Fé Ry. Co. v. Jim Phillips, 197 S. W. 1031, recently decided by this court, the opinion being not yet published.

[4, 5] In the absence of any evidence to show that delivery of the cattle was accepted by the consignee on the cars at Kansas City and that the stockyards company was acting for the consignee in unloading the shipment, we cannot assume that the stockyards company in unloading the cattle was not performing one of the duties of the transportation incumbent upon the carrier. We think the charge given was as favorable as the appellants could ask, and overrule their fourth, fifth, sixth, and seventh assignments.

[6] The eighth assignment complains of the refusal of the court to give an instruction to the effect that the jury should not consider any damage or loss resulting on account of an unusual run of cattle on the Kansas City market, and crowded condition of the pens of the stockyards company, which existed at the time of the arrival of their cattle at Kansas City. Appellee's complaint was that the weight and appearance of his cattle were depreciated by the delays in transportation, which resulted in depreciation of their market value. Testimony was introduced and issues submitted as to this delay and the resultant damages. The evidence and issues submitted had no reference to any depreciation caused by the extraordinary run of cattle and the crowded condition of the pens at Kansas City, and there was nothing in the record that would require the submission of this requested charge.

The evidence is sufficient to support the verdict of the jury, and we overrule the ninth and tenth assignments, which complain of the verdict of the jury.

Affirmed.

### On Motion for Rehearing.

Appellants, in their motion for rehearing, insist that we again review the record in this case, particularly in connection with their fourth, fifth, sixth, and seventh assignments, and we have done so.

Our general statement of the method of delivery of stock at Kansas City is correct. There is some little conflict in the evidence as to whether the consignee commission com-

pany receives the stock at the unloading pens or at their own pens. This conflict is not material in this case, because all the evidence agrees that delivery to the consignee commission company is not made until after the stock are unloaded by the stockyards company into its unloading pens. The following is an explanation of the method of handling stock at Kansas City, as given by one of appellant's witnesses:

"The method usually and ordinarily pursued in unloading live stock from the railroad cars on arrival at the stockyards and in handling said cattle from the unloading pens to the pens of the commission houses is that the railroad company turns them over to the stockyards company, who releases them to the yard men employed by the various commission firms, who deliver them to the commission firms' pens, where they are taken care of until sold and weighed by the commission firms. * * * The ordinary and usual course by which the commission houses are notified of the arrival of shipments at the Kansas City Stockyards is that the stockyards company posts a notice, giving the arrival of shipments consigned to the various commission firms, and this was practiced in connection with this shipment of cattle."

The case presented by the record is not that of the carrier placing cars on industry tracks at the warehouse of the consignee and for his convenience. It is not shown that the defendant railway company has any stock pens of its own at Kansas City from which it may make delivery of stock. The record tends to show, and we assume, that the facilities for unloading and handling stock at Kansas City are furnished by the stockyards company, and the shipper does not appear to have any choice as to whether delivery shall be made through this medium. The furnishing of these facilities giving notice of the arrival of the shipments and unloading the cattle so that delivery may be made to the consignee is, as we have before said, a part of the transportation for which the carrier is responsible. We are still of the opinion that the charge of the court that the responsibility of the railway company ceased when plaintiff's cattle were delivered to the Kansas City Stockyards Company and unloaded into the pens of said company was as favorable as appellants could ask.

The motion is overruled.