GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY V. JOHN Q. MCADAMS.

Decided January 4, 1905.

**1.—Negligence—Injury to Servant—Switching Cars—Contributory Negligence.**

Plaintiff, a head yard clerk, acting upon information given by the engine foreman that other cars were to be attached to a string standing on defendant's track, went to the rear car of the string, as was his duty, and removed from the drawhead the link bill which was required to be on the rear car to give notice to switchmen and other employes of the destination of the cars, but seeing no preparation for moving the other cars he stepped back ·on the track and replaced the link bills when an engine was violently propelled against the front end of the cars causing them to back and run over plaintiff.  Held, that plaintiff was injured through the negligence of defendant's engineer or engine foreman without negligence on his part contributing to the injury.

**2.—Same—Two Grounds Alleged—Pleading and Charge.**

Where the petition alleged two different grounds of negligence, the propelling of the engine against the string of cars which ran over plaintiff with such violence as to cause them to start suddenly backwards, and the backing of the cars over a public crossing without having a man in position to give warning, there was no error in a charge submitting each separately.

**3.—Contributory Negligence—Charge as a Whole.**

Where plaintiff's negligence, if any, consisted in his being where he was when struck, and such act, if negligent, naturally contributed proximately to his injury, a charge defining contributory negligence and instructing a verdict for defendant if plaintiff was- guilty of contributory negligence proximately causing or contributing to cause his injury, while in itself probably misleading, held not objectionable when considered in connection with the succeeding paragraph of the charge.

**4.—Charge—Invited Error.**

An appellant can not complain of error in a charge where a charge on the same subject requested by him invited the same error.

**5.—Same—Assuming Controverted Facts.**

A requested charge reciting as undisputed a number of facts, among others that plaintiff knew that the string of .cars which struck him was about to be moved, was properly refused, the evidence showing that such fact was not undisputed.

**6.—Evidence—Hearsay—Authority of Engine Foreman.**

Plaintiff's testimony that the engine foreman told him that certain cars were to be attached to the cars standing on the track where he was injured, was admissible on the issue of plaintiff's contributory negligence, it appearing that the foreman had control over the movement of cars.

**7.—Charge—Included in Main Charge—Assumed Risk.**

Requested instructions on assumed risk held properly refused because substantially given in the main charge.

**8.—Street Crossing—Rules of Railway—Maintaining Lookout—Evidence.**

A rule of a railway company that in no case shall a train be backed over a public crossing unless there is a man on the rear car to see that the way is clear, related to the movement of cars in the switch yards as well as regular trains, and under the circumstances of this case was admissible in evidence on the subject of plaintiff's contributory negligence.

**9.—Fellow Servants—Yard Clerk—Engineer—Engine Foreman.**

A head yard clerk, charged with the duty of making transfers to and over connecting lines, taking numbers, seals and initials of cars and putting link bills on the drawheads, was not a fellow servant with the engine foreman, engineer and others engaged in operating the train.

**10.—Street Crossing—Evidence—Stepping Distance.**

Testimony that the street crossing, near which plaintiff was injured, had apparently not been altered; that there was nothing to indicate any change for some time, and that it seemed to be an old crossing, was sufficient to show that the crossing had not been changed, and estimates as to the length and width of planking at such crossing, based upon the witness having stepped the distance, were admissible.

**11.—Verdict—Excessiveness.**

A verdict of $12,000 for the loss of plaintiff's leg and injuries affecting his eye sight, which from the evidence the jury might have concluded were permanent, held not excessive.

## On Motion for Rehearing.

**12.—Contributory Negligence—Proximately Contributing.**

Although plaintiff's only negligence, if any, was such as naturally contributed proximately to his injury, defendant can not complain of a charge instructing a verdict for defendant if plaintiff's negligence proximately contributed to his injury, where a requested charge concluded with an instruction for defendant if plaintiff's negligence caused or contributed to his injury; and the fact that the main charge required plaintiff's negligence to "proximately" contribute to the injury was immaterial.

Appeal from the District Court of El Paso. Tried below before Hon. J. M. Goggin.

*Baker, Botts, Parker & Garwood* and *Beall & Kemp*, for appellant.— 1. The testimony did not present any question as to whether or not plaintiff's negligence, if he was guilty of such negligence, was the proximate cause of the injury, but the proof was evident and undisputed that if plaintiff was guilty of negligence, such negligence proximately caused or contributed to his injury. It was, therefore, error in the trial court to submit the issue of proximate cause in connection with the issue of contributory negligence. Texas & P. Ry. Co. v. McCoy, 90 Texas, 265, 266; Gulf, C. & S. F. Ry. Co. v. Rowland, 90 Texas,

367, 370; Culpepper v. Railway Co., 90 Texas, 627, 634; Gulf, C. & S. F. Ry. Co. v. Bryant, 66 S. W. Rep., 808; Ebert v. Railway Co., 49 S. W. Rep., 1105.

2. The verdict and judgment are erroneous, and should be set aside, for the reason that if the plaintiff was injured by the negligence of an employe of the defendant he and such employe were at the time fellow servants, doing the same character of work and service, at the same time and place, at the same piece of work, and were working together to a common purpose, and while the plaintiff was not engaged in operating the cars, locomotives or trains of the defendant. Batts' Ann. St., art. 4560ea-4560g; Gulf, C. & S. F. Ry. Co. v. Howard, 80 S. W. Rep., 229; Texas & N. O. R. R. Co. v. Tatman, 31 S. W. Rep., 434; Moore v. Jones, 39 S. W. Rep., 593; Texas & N. O. R. R. Co. v. Echols, 41 S. W. Rep., 488; Lawrence v. Railway Co., 61 S. W. Rep., 342; Lakey v. Railway Co., 75 S. W. Rep., 566; Galveston, H. & S. A. Ry. Co. v. Cloyd, 78 S. W. Rep., 43; Medberry v. Railway Co. (Wis.), 81 N. W. Rep., 659; Railway Co. v. Bowles, 88 Texas, 637; Railway Co. v. Whitaker, 11 Texas Civ. App., 668; Texas C. Ry. Co. v. Frazier (Civ. App.), 34 S. W. Rep., 664; Texas C. Ry. Co. v. Frazier, 90 Texas, 33; Gulf, C. & S. F. Ry. Co. v. Warner, 89 Texas, 475.

*Patterson & Buckler,* for appellee.—1. Appellant having asked the court to give to the jury a special charge in substance the same as the portions of the general charge complained of, can not be heard to question the correctness of the said parts of the general charge. Railway Co. v. Sein, 33 S. W. Rep., 558; Railway Co. v. Sein, 89 Texas, 65.

2. The evidence did not show that appellee did any act which if negligent, was necessarily the proximate cause of his injury. No such act was either alleged or proved. Railway Co. v. Ball, 75 S. W. Rep., 47 (page 8 of Mns.); Clark v. Dyer, 81 Texas, 344; Railway Co. v. Johnson, 67 S. W. Rep., 770 (affirmed by the Supreme Court, 95 Texas, 409); Railway Co. v. An Chonda, 75 S. W. Rep., 559; Shaffer v. Railway Co., 105 U. S., 249; Beach on Contributory Negligence, secs. 14, 19, 24.

3. It is not any negligence on the part of plaintiff contributing in any degree to his injuries that will bar a recovery, and that it must be such negligence as amounts to the want of ordinary care. Railway Co. v. Johnson, 67 S. W. Rep., 770; Beach on Contributory Negligence, sec. 19.

JAMES, CHIEF JUSTICE.—Action for damages for personal injuries, verdict for plaintiff for $12,000. Plaintiff was head yard clerk in appellant's yards at El Paso. He alleged that it was a part of his duty to put link bills in the drawheads or couplers of the cars of defendant, and that he was required to see that the link bills were put in the drawheads of the rear car of freight trains, that in performing this duty on this occasion, he went to the rear end of the rear car of a string of cars on defendant's track for the purpose of changing the link bills as he had been informed that other cars were to be attached to said string

of cars in the rear, that he took out the link bills for the purpose of making the change and stepped off the track, but seeing no preparations for attaching the other cars he stepped back upon the track and replaced them, but before he could get out from between the rails an engine was violently propelled against the front end of the string of cars causing the rear car to start back suddenly and violently striking him, knocking him down and running over one of his legs and injured it so that it had to be amputated.

The negligence of defendant was alleged to be the propelling said engine so violently and with such great force against said string of cars as to cause said cars to move backward so rapidly as to cause plaintiff's injury. Also that said rear car into which he replaced the link bills was standing near the southwest side of Octavia Street, one of the public and much traveled streets of El Paso and that when said string of cars was propelled rapidly backwards, four of said cars crossed Octavia Street and defendant was guilty of negligence in the movement of said string of cars, in that said train was backed over said public street with great rapidity without having a man at said place and without giving any warning and without having any man on the rear of said string of cars to see that the way was clear as required by the rules of defendant published for the government of those whose duty it was to manage its trains.

Defendant pleaded general denial; that plaintiff knew of the danger and assumed the risk of placing himself where he was injured; that he voluntarily placed himself in a position of danger where his duty did not require him to be and where he had no business to be, and where the employes of defendant operating its engines and cars did not see him and were not required to look for him; that his own negligence caused or contributed to his injuries, and further that if the accident was caused by the negligence of any other persons, such persons were plaintiff's fellow servants.

*Conclusions of Fact.*—We find that the verdict is supported by testimony that plaintiff was injured through the negligence of defendant's engineer, or defendant's engine foreman; that plaintiff had no knowledge or reason to apprehend, that the string of cars was at the time in the act of being moved; that plaintiff was not guilty of contributory negligence; that plaintiff was not a fellow servant of either of said persons, and that the amount of the verdict is not unreasonable.

*Conclusions of Law.*—The first assignment of error we overrule because the petition alleges two separate forms of grounds of negligence, and the court did not err in submitting as a matter of negligence the propelling of the engine with such force and violence against said string of cars as to cause said cars to start violently and suddenly backwards, separately from the other form of negligence alleged, to wit: The backing of trains over Octavia Street without having a man in position to give warning. For this reason the eleventh and fourteenth assignments which proceed upon the theory contended for are also not sustained.

The second assignment we overrule also. It complains of error in the seventh paragraph of the charge, defining contributory negligence thus: "By contributory negligence is meant some negligent act or omission on the part of plaintiff, which concurring and cooperating with some negligent act or omission on the part of the defendant, is the proximate cause of the injury;" and in the eighth paragraph in instructing "and if you find that plaintiff was not himself guilty of contributory negligence proximately causing or contributing to cause his injuries . . . , you will return a verdict for the plaintiff, but unless you do so believe you will return a verdict for the defendant."

Defendant insists, and we think correctly, that the negligence, if any, of plaintiff consisted in his being where he was when struck, and that such act, if negligent, naturally contributed proximately to his injury; and there was really no issue, in the very nature of the case, as to whether or not defendant's negligence, if any, contributed to or caused the accident.

If the charges had stopped with the eighth paragraph, the jury might have been misled. But the ninth paragraph immediately following and in the same connection, reads as follows: "If the plaintiff was guilty of negligence causing or contributing to cause his injury or assumed the risk that caused his injury, then and in either of said events your verdict must be for the defendant, as the plaintiff in that case can not recover.

"Now, if you believe from the evidence that the plaintiff was guilty of negligence in being where he was when injured then and in that event your verdict must be for the defendant.

"If you believe from the evidence that it was the plaintiff's duty to handle and place the defendant's link bills, according to the defendant's method or the method adopted by and customary with its employes, in the drawheads or couplings of the ends of cars to be carried to the link and the plaintiff knew of such method of the defendant or such method customary with employes of having said link bills placed and that under all the surrounding facts and circumstances known to plaintiff, or which could have been known to him by the use of ordinary care, a person of ordinary prudence would not have gone on the track at the end of said string as plaintiff did or would not have been upon the track as plaintiff was when struck by the car, then your verdict should be for defendant. And if you believe from the evidence that the plaintiff at the time he was struck and knocked down, or prior thereto, failed to use ordinary care to prevent and avoid injury to himself and that such failure on his part, if any, contributed to cause his injury, then and in that event you must find for the defendant notwithstanding you may find the defendant or its servants also guilty of negligence contributing thereto."

In this paragraph the jury were directly told in terms in connection with this subject of contributory negligence (with which the entire paragraph deals) that the verdict must be for defendant if plaintiff was guilty of negligence *in being where he was when injured.*

If the jury read and considered this paragraph, which we are bound to assume they did, they were not confused or misled by what had

been stated in the preceding portions of the charge about contributory negligence. Say, they had been told that plaintiff was barred from recovering if his negligence proximately caused or contributed to his injury, and that this standing alone would have led them to go into a consideration of the question, not merely of plaintiff's negligence in being where he was, but whether that negligence proximately caused or contributed to his injury, the ninth paragraph relieved them from going into the last named matter. In other words by paragraph nine the court construed for the jury its references to contributory negligence in that respect. The court told them if they found that plaintiff was guilty of negligence in being where he was, they need find no more. The jury could not have been misled unless they stopped reading the charge at the end of the eighth paragraph, and this is not to be presumed.

But further, defendant is not in a position to complain of the court's use of expressions which required the jury to find that defendant's negligence contributed to his injury. The only charge which defendant requested to be given on the issues of plaintiff's negligence in respect to his going into or being in the position he was when struck (Special charge No. 10) contains the same requirement. This was evidently the view entertained and proceeded upon by defendant at the trial. There is nothing to indicate that the requested charge was presented until after the court had read its charge to the jury, but the indications, if anything, are to the contrary. Certainly defendant can not complain of such matter, having thus contributed to it. Defendant it seems to us was rather fortunate in the circumstance that the charge nevertheless told the jury as plainly as it did in places, that if plaintiff was negligent in being where he was, to find for defendant. International & G. N. Ry. Co. v. Sein, 89 Texas, 63; Missouri, K. & T. Ry. Co. of T. v. Eyer, 96 Texas, 75.

The third assignment complains of the court's refusal to give a certain charge, which the assignment states was intended to correct the error complained of in the above assignment. We fail to see, however, how it can be claimed to so correct said charge when it itself concludes, "and if you further believe that such negligence on his part, if any, caused or contributed to his injuries, your verdict will be for defendant." If given, the requested charge would have restricted the case to one of the issues of negligence, and for this reason it was properly refused. Besides it contained nothing but what was in substance and effect given, apart from the objection it was subject to of making the case turn on one issue of negligence.

The requested charge refused, which is the subject of the fourth assignment, recited a number of facts as undisputed, and concluded with an instruction to find for defendant. It was a peremptory direction to find for defendant. The facts stated were not all undisputed. It was not an undisputed fact that plaintiff knew the string of cars was ready to be moved, at least that it was immediately to be moved. There were circumstances which tended to indicate to him that there was no danger at the time in going upon the track to replace the bills.

Plaintiff testified: "Ike Rivers was the engine foreman, employed

by the defendant, of the train that struck the cars and run over me. The engine foreman told the engineer what to do and the men what to do, he generally told me what he was doing and if I was not there he would whistle for me and if I was there he would tell me. There were about five coal cars on track No. 4, standing there. He told me he would take these empty coal cars back with the load that was going to the T. and P. link. I grabbed the number of the empty coal cars and went back to where the cattle were switched, over to see where the link bills were. I had instructions to keep the link bills on the eastern end of the string. I got the link bills and stepped to the north side of the track and waited for Rivers to bring the empty coal cars as he said he was going to do, and I stayed there about three or four seconds, I suppose. I did not see the coal cars move and did not have to stand there very long. I had to make transfers to the Rock Island, also route these cattle cars, foreign cars. I stepped back to put the link bills back where I got them. I did not see a prospect of the coal cars coming over and I put them on the east end of the string and as I started to get out the engine knocked me down." Besides this it was shown that the rules required that in no case must a train be backed over a public crossing or highway unless there is a man on the rear car to see that the way is clear. The fact that no man was stationed at the rear end of this train, tended to the assurance that it was not to be moved.

At this place we may dispose of the seventeenth assignment, by which the point is presented that it was error to admit the testimony of plaintiff "to the effect that certain coal cars, about five in number, a short time prior to this accident were standing on track No. 4, southwesterly from the place where the accident occurred, and that the engine foreman, Ike Rivers, told him that these coal cars were to be put on certain cars standing on the track where plaintiff was injured and were to be backed with the string of cars last mentioned to the T. and P. link."

The proposition is that this was hearsay and there was no evidence that Rivers had any right to advise or authority to instruct plaintiff, nor that the plaintiff was authorized to act on the advice, instructions or statements of Rivers. Plaintiff showed the functions of Rivers. He was foreman of the engines, or engine foreman. He was foreman of the engine, told the engineer what to do and the men what to do. "I do not know that it was his duty to instruct me what to do. I do not know that it was, he generally told me what he was doing and if I was not there he would whistle for me and if I was there he would tell me." It is evident from this in connection with other testimony stated in discussing the fourth assignment that he coupled the engines in their movements with reference to the formation of trains at that place. The testimony was clearly admissible on the issue of plaintiff's contributory negligence.

The fifth assignment complains of the refusal of a charge, which in effect was that if plaintiff knew the method of defendant, or custom with its employes, of having link bills placed, and if an ordinarily prudent person would under the circumstances have known, or if plaintiff

did know, that it was dangerous to go upon the track and place the link bills and remain till injured, he could not recover.

Considered as a charge on assumed risk, the instruction was erroneous and properly refused, because to assume the risk of a danger, it must be known, or be so obvious to the injured party that he must necessarily have known it. The instruction would have charged him with the danger referred to if an ordinarily prudent person would have realized its presence. The court gave the jury the rule in reference to assumed risk, considered in the light of an instruction on contributory negligence, we notice that in so far as the instruction related to this subject, it was substantially given.

In view of the charges in reference to assumed risk, there was no error in refusing the charges mentioned in the sixth and seventh assignments.

The twelfth and thirteenth assignments advance the proposition that the rule: "In no case must a train be backed over a public crossing or highway unless there is a man on the rear car to see that the way is clear," should not have been allowed in evidence, because it shows upon its face that it was intended for the protection of the public and not of defendant's employes, and further that it was intended to regulate the movement of trains on the road and not its cars in switch yards, also that the evidence was immaterial because it is manifest from the testimony that the failure to have a man on the rear car in no way contributed to plaintiff's injury.

Plaintiff testified he was familiar with the rule at the time. He testified: "I looked on top of this car (referring to the car on which he placed the link bills). I saw nobody, I thought it perfectly safe. There was no man on the car, I looked to see." He testified also that at the time he was struck, he was on the west side of the Octavia Street crossing, right at the crossing, and that with reference to the street, it (the train) went clear across the street, and as to how much farther, he supposed it went a car length past the street. The rule was general as to place. In connection with plaintiff's testimony it was admissible on the subject of his contributory negligence, or his knowledge of danger.

The tenth assignment raises the question of fellow servant. Appellant contends that: "If plaintiff was injured by the negligence of an employe of defendant, he and such employe were at the time fellow servants doing the same character of work and service, at the same time and place, at the same place of work and were working together to a common purpose, and while plaintiff was engaged in operating the cars, locomotives or trains of the defendant."

If the last part of the above proposition were true, he and the others engaged in operating the train, were not fellow servants under the terms of the statute. He was hurt by the acts of those handling the train. Plaintiff must either have been engaged in operating that, or not engaged in its operation. If the former, the rule of fellow servant would be no defense; if the latter, the relation did not exist. Appellant states in its brief that all the parties, the engineer, the foreman of the engine, the plaintiff and all other persons then and there en-

gaged about the train, were working together at the same time and place, at the same piece of work and to the common purpose of taking the cars in question to the T. & P. link. If this be so, it is fatal to its contentions, for if the work being done was the moving of the cars to the T. & P. link, the defense of fellow servant was by statute taken away.

The work immediately being done, however, was the coupling of this string of cars to other cars. To quote from appellant's brief: "Ike Rivers testified as follows: 'I gave the signal to him (the engineer) to move back and couple up. I did the coupling personally.' Cook, the engineer, testified that . . . just prior to the accident he went on the main track and stood there while another engine did some work on the east end; that the last engine took some cars off and put some back on the main track, but did not couple them up, but left them some distance apart; that witness received the signal to back east, and he backed up for the purpose of coupling on the cars standing on the main line."

The object of the link bills (as appellant states) was to show what was to be done with the train of cars, and if they were not in the proper place so that they would be observed by the trainmen of the connecting company, the cars would be sent back.

Plaintiff was head yard clerk charged with the duty of making transfers to and over connecting lines and of grabbing the numbers, seals and initials and putting link bills on the drawheads of the couplings. His duty in this particular instance was to see that the link bills were removed from where they were and deposited at the proper place on the train when made up. He had nothing to do with the handling or moving of the cars nor with the coupling that was being done, by the others. We can not see how it can be said that he and they were in the same grade of employment or doing the same character of work or service, or working together in the meaning of the statute.

The eighth and ninth assignments are that a new trial should have been granted, because the evidence established that plaintiff assumed the risk, and that he was guilty of contributory negligence or that the dangers he exposed himself to were incident to his employment. These matters are disposed of by our conclusion of fact.

The charge on the measure of damages was correct.

The eighteenth assignment refers to testimony of witness A. J. Elrod. He testified that since the adjournment of the day before, he had examined Octavia Street crossing for the purpose of taking in the surroundings and measuring the plank crossing, that he did not know whether the crossing was in the same condition as at the time plaintiff was injured, but that apparently it had not been altered, that he saw nothing to indicate there had been any change made for some time, that it seemed to be an old crossing, that he stepped the planking of the crossing for the purpose of seeing how wide it was and that he estimated it to be between 15 and 16 feet wide and that it was about 50 feet from the east end of the planking to the west line of Octavia Street, which line he could only locate by sighting up the street and along the fence that approached the crossing on the north side. The

objections to this testimony were that it was not shown that the crossing was in the same condition as when plaintiff was injured, and that the testimony as to the width and location of the crossing was mere conjecture. The latter objection is not sustainable.

Appellant states the purpose of this testimony to have been to show that plaintiff in his testimony had confounded the line of the street with the plank crossing, and that although the east end of the car might have been five or six feet from the plank crossing, it would still be in the street, his object being to place plaintiff in the street at the time he received his injury instead of in the defendant's yard where the testimony placed him.

The testimony given by Elrod stated enough facts to indicate that the crossing had not been changed, and the testimony he gave was not subject to the objections made to it.

The evidence showed that plaintiff was 19 years of age when he received his injury, was of good habits and was earning $60 a month. He missed no time and worked twelve hours a day. One witness stated that his personal appearance indicated him to be physically weak or delicate, but mentally very bright. His injury resulted in the loss of his left leg below the knee, and he was confined to the hospital about three months. He testified: "The condition of my eyes before I was hurt was always very good—very good. Since I was hurt my eyes are weak, I can not read long at night and can not read very fine print in day time. I first noticed my eyes were weak after I began to read a little bit after the accident and I notice it every time I read. I never had any trouble or weakness with my eyes before I was injured, never had anything the matter with my eyes, they were always unusually strong." This is all the testimony there was on the extent of his damage. The accident occurred in February, 1903, and the trial took place in April, 1904. We feel unable, notwithstanding the vigorous protest of appellant, to give satisfactory reason for finding fault with the amount of this verdict. From the time the impairment to plaintiff's eyes had continued, the jury may have concluded that it was permanent.

Considering the youth, intelligence and earning capacity of plaintiff, when hurt, the verdict was not disproportionate to injuries involved in the above testimony.

Judgment affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

In reference to the second assignment of error. If we should be held to have misconstrued the effect of the charge in holding that read and considered in its entirety, it was not calculated to mislead the jury on the issue of contributory negligence, we think it clear, as stated in the main opinion, that defendant could not have complained, had the charge in all places where it referred to the negligence of plaintiff, required the jury to find that it caused or contributed to his injury. Defendant's special instruction No. 10 concluded with this requirement

in these words: "And if you further believe that such negligence on his part, if any, caused or contributed to his injuries, your verdict will be for the defendant." This was the only request defendant made, as to the presentation of the issue of plaintiff's negligence, and if the court so presented the issue to the jury defendant can not object upon that ground.

But appellant says that the court in its charge did not make use of the language that is in the requested charge, but used the expression negligence *proximately* causing or contributing to cause his injuries,— instead of causing or contributing to his injuries. Defendant's view of the matter at the trial (judging from the charge asked) was not as is urged here, that under the circumstances of this case in placing himself where he did that any negligence whatever of plaintiff, necessarily as a matter of law caused, or contributed to his injury. We take it, that, certainly defendant in asking the instruction could not possibly have had in mind any negligence of whatsoever character of plaintiff in such matter, else why qualify it by saying negligence which caused or contributed to his injury? This qualification being embodied in the instruction on the subject of plaintiff's negligence, asked to be given by defendant, its presence in the court's charge affords no ground for complaint by defendant, although the court may have done that which is proper in every case where that kind of submission is to be made, viz: To require the negligence to have proximately caused or contributed to the injury.

Appellant in the motion for rehearing misconstrues the following expression contained in the opinion: "There is nothing to indicate that the requested charge was presented until after the court had read its charge to the jury, but the indications, if anything, are to the contrary." What was meant by this was, not that the indications were that the charge was requested after the charge had been read to the jury but that there was nothing in the record making it appear that the charge was asked after the main charge was delivered. The context, we think, negatives any such meaning as appellant imputes to the language used.

The motion for rehearing is overruled.

*Overruled.*

Writ of error refused.