**BERWALD et al. v. TURNER et al.**

No. 2676.

Court of Civil Appeals of Texas. El Paso.
June 30, 1932.

Rehearing Denied July 18, 1932.

Lee G. Carter and Elihu E. Berwald, both of Dallas, for appellants.

White & Yarborough, of Dallas, for appellees.

**PELPHREY, C. J.**

This is an appeal from a judgment in favor of appellees for the sum of $3,000 for personal injuries alleged to have been sustained by Mrs. Marguerite Turner from a fall on the floor of the store of appellants in Dallas, Tex. The facts alleged are that Mrs. Turner went into the store of appellants, took an elevator run by appellants for the purpose of going to a beauty parlor located on the second floor, and that, when she alighted therefrom, slipped upon a spot then being cleaned by appellants' servant, and was injured.

The case was submitted to a jury, which found: (1) That Mrs. Turner sustained a fall at the time and place alleged; (2) that she sustained personal injuries; (3) that the injuries were the proximate result of the fall; (4) that appellants caused or permitted their employee to put a wet substance on the floor at the time and place in question, causing it to become wet and slick, and unsafe for Mrs. Turner to walk upon; (5) that they were negligent in so doing and did not exercise ordinary care to warn her of the unsafe condition of the floor; and (6) that $3,000 would reasonably compensate her for her physical and mental suffering, past and future, and her diminished capacity to earn money, past and future.

The jury further found that Mrs. Turner did not see the condition of the floor before walking on it; that such condition was in open view and visible to her, but that her failure to see such condition was not negligence; that she saw that the portion of the floor on which she fell was being mopped, but that her act in walking on the floor that she saw was being mopped, was not negligence; that Mrs. Turner's fall was not the result of an unavoidable accident; that Mrs. Turner was not guilty of negligence in the manner in which she walked or stepped after she got on the wet portion of the floor; that the boy mopping the floor failed to warn her in time for her, by the use of ordinary care, to have avoided slipping and falling.

Appellants contend that the trial court should have instructed the jury to return a verdict in their favor and its failure to do so is made the basis of their first four propositions. They assert that the evidence showing that the servant was engaged in mopping the floor at the time and place where Mrs. Turner fell, his work was necessarily observable to any one using the floor, and, the condition of the floor where she fell being in open view and visible to her, the servant, as a matter of law, was not negligent in doing the work or in failing to tell her he was doing it, but had a right to expect her to use ordinary care in walking upon the floor; that, there being no proof that the floor was being mopped in a negligent or unusual manner, and it appearing conclusively that Mrs. Turner saw, or should have seen, the condition of the floor and that the servant was engaged in mopping it before she fell, the fall was proximately caused by her own negligence, and therefore she should not recover; and it appearing that the condition of her hand at the time of trial not having resulted until some time after the fall and there being no satisfactory proof that such condition resulted from the fall, her demand on account thereof was not established.

Mrs. Turner's testimony relative to the questions, is:

"Q. Do you know Mr. Berwald over there —did you know them at the store here? A. Yes, sir.

"Q. Anything unusual—were you ever in that store? A. Yes, sir.

"Q. Any time you were in there has anything unusual happened to you? A. Yes, I fell.

"Q. When was that, if you remember? A. The 31st of May, 1929. * * *

"Q. Do you remember what time of day that was, Mrs. Turner? A. It was sometime after nine o'clock.

"Q. What was your occasion to visit in the store? A. I went in there to get my hair cut.

"Q. What kind of business did they have there? A. They had piece goods downstairs and a beauty parlor upstairs. * * *

"Q. Well, how did you get from one floor to the other? A. By elevator. * * *

"Q. After you went in you got on the elevator. Did you tell him where you wanted to go, or is that as far as the elevator went? A. No sir, I told him where I wanted to go.

"Q. Now when you stopped up there was the door open or did they have to open the door? A. They had to open the door, I think.

"Q. Then what happened? A. Well, the floor was wet and I stepped off and fell.

"Q. Did you have any notice that the floor was wet and slippery? A. No, sir.

"Q. Did the elevator boy say anything to you? A. No, sir.

"Q. Just opened the door and let you out? A. Yes, sir.

"Q. And you stepped out? A. Yes, sir.

"Q. And the elevator went on its journey? A. Yes, sir.

"Q. Or do you know? A. I think it went on.

"Q. Now explain what part of the furniture and your anatomy you fell on. A. Well, I just stepped off and fell backwards.

"Q. Where did your feet go? A. Went straight up—just right out.

"Q. Now what part of your anatomy—what part—what did you strike? A. Well, I tried to catch with my left hand and fell and hit my head and I just caught mostly though on my left hand.

"Q. Where did you strike your head, if you remember? A. I don't remember, just backwards on the floor.

"Q. Did you fall easy or hard? A. I fell hard. * * *

"Q. Now at that time was there anything the matter with you, physically? A. No, sir.

"Q. Was anything the matter with that left hand there? A. No, sir.

"Q. Anything the matter with your nerves and nervous system at that time? * * * A. No, sir. * * *

"Q. I will ask you whether or not there is any difference in the feeling of your hand? A. Yes, sir, there is.

"Q. What is the difference? A. Well, this hand feels—I don't know—just kind of dead like. * * *

"Q. Now gentlemen, feel of that left hand there and determine—All right now, since the date of the injury there, was anything the matter at all with your fingers before you were hurt there that day? A. No, sir.

"Q. Was there any stiffness there? A. No, sir.

"Q. Now since that time have you been able to use it? A. No, sir. * * *

"Q. Now you fell up there, about what area there was wet, if you remember? A. Well, I don't know but it was all in front of the elevator.

"Q. Now with reference to the floor where you got out, where was that wet place? A. It was all around in front of it.

"Q. Did you see that before you stepped out there? A. No, sir.

"Q. How did it appear to you with reference to whether it was slippery or not? A. Well, it was awfully slick. * * *

"Q. Now, when did you first realize the condition of your hand? A. When it first started to heal at the cut place.

"Q. Now where was that? A. Just bursted it open there.

"Q. That is where it connects to your arm? A. Yes, sir, just above my wrist.

"Q. Which way did it burst it open? A. Right across that way, a small scar crossway there. * * *

"Q. How did it get along there, did it heal up quickly or not? A. No, it was about two weeks, I guess, in healing.

"Q. Do you know what caused it to be bursted open, what it struck? A. I struck the the floor with it. * * *

"Q. Now what else, if anything—how did it affect your hand, if anything? A. Well, just before it started healing it was just like having the cramp in the bottom of your foot and started drawing and after awhile couldn't get it straight, just kept getting worse until I couldn't straighten it."

On cross-examination she testified:

"Now you testified, I believe, that you stepped out of the elevator and fell? A. Yes, sir.

"Q. How far did you go before you fell? A. I taken a step or two, I don't know. * * *

"Q. No part of the elevator was wet, was it? A. No, not that I know of. * * *

"Q. Now who was in the beauty parlor at the time? A. The girls operating the parlor.

"Q. Who else was there? A. The boy mopping the floor.

"Q. Do you know where the boy was at

the time you fell? A. No, I didn't see him until I started to fall.

"Q. When did you first see the boy? A. When I started to fall. * * *

"Q. Where was he standing, what part of the beauty parlor was he? A. He was over at the left hand side of the elevator. * * *

"Q. About how far away from the elevator? A. Oh, I don't know; I just remember seeing him standing there, I don't know how far it was. * * *

"Q. Now you testified I believe, that the floor was wet right in front of the elevator, is that correct? A. Yes, sir.

"Q. About how far away was the wet portion of the floor from the elevator? A. It was wet all around the front of it.

"Q. Was there any portion around the front of the elevator—was there any portion of the floor between the elevator and the wet portion that was dry? A. Not that I know of.

"Q. Did you step immediately off on the wet floor or was it dry when you first stepped off? A. I don't know, it was wet when I got off of the elevator.

"Q. Now the question I asked you is this: Was there any portion of the floor that was dry in front of the elevator that you walked upon before you fell? A. No, sir, not that I know of. * * *

"Q. You testified just a few minutes ago that you have lost the use of your hand and that that began immediately after this accident, that was your testimony wasn't it? A. Well, I said my hand gradually got worse with it and I cannot use it now."

From the above it appears that appellants' servant had either mopped or was engaged in mopping the floor immediately in front of the elevator door, that the floor was wet and slippery, and that Mrs. Turner, when she stepped out of the elevator, slipped and fell without seeing the condition of the floor or the servant who was doing the mopping before she stepped on the wet area. Therefore, from her testimony, there is no basis for saying that she was guilty of such contributory negligence as would preclude a recovery. The above testimony further shows that in the fall she suffered a cut on her left hand, and that before that cut was healed her hand began to stiffen, and that such condition gradually became worse until the hand became useless, and that prior to the fall her hand had been normal. It therefore appears that the condition of the hand at the time of trial resulted from the fall.

The attack made upon the action of the court in refusing to instruct a verdict in favor of appellants is without merit. This objection to the court's definition of "new and independent cause" is also without merit. Dallas R. Co. v. Alexander (Tex. Civ. App.) 23 S.W.(2d) 512. The definition approved by the Texarkana Court of Civil Appeals in that case was substantially the same as the one given by the trial court here.

Special issue No. 19, as to the amount which would compensate Mrs. Turner for mental and physical suffering, past and future, and her diminished capacity to earn money, in the past and in the future, was objected to by appellants as multifarious. We cannot agree with such contention. The issue embodies in the one issue all the elements of damage, and is the proper way to submit an issue on the measure of damages. International-Great Northern R. Co. v. King (Tex. Com. App.) 41 S.W.(2d) 234.

Appellants, by the fifteenth proposition, assert that the court erred in rendering judgment against them in the absence of a finding that the condition of Mrs. Turner resulted from the injuries found by the jury to have been sustained by reason of the fall.

The jury found that Mrs. Turner sustained a fall at the time and place in question, that she sustained personal injuries at the place and on the occasion in question, and that such injuries were the proximate result of said fall. These findings appear to us to justify the judgment.

In answer to special issues Nos. 20, 22, 23, 24, and 25, the jury found that Mrs. Turner did not see the condition of the floor before she walked on it; that the condition was in open view and visible to her; that she was not guilty of contributory negligence in failing to see the condition of the floor before walking on it; that she saw that the floor was being mopped; but that her act in walking on it when she saw it was being mopped was not negligence.

Appellants' contention that the findings that the condition of the floor was in open view and visible to Mrs. Turner and that she saw that the floor was being mopped would preclude her from recovering is not tenable, the jury having also found that she did not see the condition of the floor and was not guilty of contributory negligence in failing to see it.

It cannot, we think, be said that a person who walks upon a floor that is being mopped is guilty of contributory negligence as a matter of law, and therefore the finding of the jury on that question must govern.

We, having heretofore stricken from the record appellants' bills of exceptions, the propositions advanced by them relative to the improper argument of counsel for appellees will not be considered.

Finding no reversible error in the record, the judgment of the trial court is affirmed.