## CALLISON v. RED et al.
### No. 11125.

Court of Civil Appeals of Texas. Galveston.
March 6, 1941.

Rehearing Denied March 27, 1941.

Taliaferro & Graves, of Houston, for appellant.

W. Scott Red, George Red, and Tom M. Davis, all of Houston (Baker, Botts, Andrews & Wharton, of Houston, of counsel), for appellees.

GRAVES, Justice.

This appeal is from a judgment of the 127th District Court of Harris County, in favor of appellees and against appellant, entered upon the verdict the court instructed the jury to render at the close of appellant's evidence and before the appellees had offered any in their own behalf; the suit having been one for damages for personal injuries, allegedly suffered by appellant's wife from slipping and falling upon an office floor, claimed to have been maintained in a negligent and unsafe condition by the appellees.

These respective statements from the briefs of the parties outline more fully the reaches of the cause, to-wit:

(1) That of the appellant:

"Appellant, plaintiff, alleged, in substance, that his wife, Marie Callison, on July 15, 1938, visited the offices of appellees, defendants, practicing physicians, 817–819 Caroline Street, Houston, for professional examination. That, in passing from the reception room to a consultation, via a hallway, Marie Callison fell, due to defective condition and negligent maintenance of the premises. A partnership, joint-adventure, and joint-maintenance, were alleged between both appellees, and ownership alleged in S. C. Red. That, as a result of the fall, Marie Callison suffered a fractured hip, with consequent complications, one of which was phlebitis, an inflamation of the veins.

"Appellee-defendants filed separate, but identical, answers, consisting of the usual general demurrer, general denial, special pleas of contributory negligence, and specially denying partnership or any joint adventure.

"The proof showed Mrs. Marie Callison, wife of appellant, on July 15, 1938, visited appellees' offices to have her blood pressure tested. Dr. S. C. Red waited on her companion. After waiting a short time, Marie Callison saw Dr. W. S. Red pass through the hall. There was no one else in the reception room and Mrs. Callison started up, intending to go to the consultation room of Dr. W. S. Red. Just as she stuck one

foot out into the hall, from the reception room to the hallway, she slipped and fell.

"For reversal, appellant submits the following propositions:

"Proposition No. One. The trial court erred in directing a verdict for the defendants, because the pleadings and the evidence of the witnesses Marie Callison, Robert B. Taylor, W. S. Red, S. C. Red, Kaster Colbert, and the proffered, improperly rejected testimony of the witness Robert Taylor, raised issues of negligence on the part of the defendants in failing to maintain the premises in a reasonably safe condition.

"Proposition No. Two. Where the witness, Robert B. Taylor, testified that he examined the floors on February 4, 1939, and that the floors at that time were uneven, such testimony was admissible for the purpose of showing that the same condition existed on July 15, 1938.

"Proposition No. Three. Where the witness, Robert B. Taylor, testified that on February 4, 1939, the floors were not level on the premises where the injured person fell and where the defendant, S. C. Red, who is the owner of the property, testified that there was no change of condition. Then the testimony of the witness, Taylor, was admissible.

"Proposition No. Four. Where the witness, A. E. King, after qualifying as an expert on floors, testified that he examined the floors in September, 1939; that at that time the floors sloped and were uneven; this testimony was admissible as affording a presumption that the same condition existed on July 15, 1938.

"Proposition No. Five. Where the witness, A. E. King, after first having qualified as an expert on floors, testified that in his opinion the floors were not safe at the time of his examination, in September, 1939, this testimony was admissible where the defendant, S. C. Red, said that there was no alteration of condition."

(2)  That of the appellees:

"The trial court properly instructed a verdict herein for appellees, for the following reasons:

"(a)  The evidence failed to show any actionable negligence on the part of appellees, or either of them;

"(b)  Irrespective of negligence, the condition of the floor was open and obvious, and Mrs. Callison assumed the risk of using it; and

"(c)  Even if the evidence was sufficient to show actionable negligence in the case of an invitee and the risk of using the floor was not assumed, Mrs. Callison, the injured party, at the time and place of receiving her injuries, was a trespasser, or at most a licensee, and took the premises in the condition in which she found them.

"The following facts were proven by undisputed evidence:

"(a)  Mrs. Callison had suffered for years with an arthritic right knee which, through a lack of full flexion and extension, created a tendency to slip and an inability to retain or regain her balance in the event her foot slipped. Despite that condition she was wearing high heel shoes instead of low heel, broad surface walking shoes, and was not using a cane or other support to assist in walking.

"(b)  Her fall was occasioned by her right foot slipping on an ordinary hardwood floor, which had been polished with Johnson's floor wax in the usual manner eleven days before, and thereafter traversed by numerous persons who had neither slipped nor noted any unusual condition of the floor. No greasy, oily, wet, or foreign substance of any kind was found on the floor. It does not appear that any mark was left on the floor due to Mrs. Callison's slipping. She described the floor as "a little rough", but she did not expressly attribute her fall to that fact. For some ten minutes or more just prior to her fall Mrs. Callison had been seated in a position to observe the floor where she slipped, and had actually noted that it was an uncovered wooden floor. She admittedly expected any hardwood floor to be waxed. Hence, before proceeding upon the floor, there was no condition or circumstance about the same which was not known to or anticipated by her.

"(c)  At the time and place of her fall, Mrs. Callison was a trespasser, or a licensee, in that, despite her knowledge of the custom of the particular offices and that of other physicians' offices which she had visited in the City of Houston and elsewhere, Mrs. Callison, without invitation and before she fell, left the reception room, the public portion of said offices and entered the private portion of same, where the private consultation and examination rooms were located.

"First Counter-Proposition. Even assuming that Mrs. Callison was an invitee at the time and place that she sustained her

injuries, the evidence in this case wholly fails to raise any issue of negligence, which proximately caused said injuries, and hence the trial court properly instructed a verdict for appellees.

"Second Counter-Proposition. The trial court properly excluded evidence as to the slope in the floors found to exist in February and September, 1939, there being evidence that such slope did not exist on July 15, 1938, the date of the accident, and no evidence, or basis for a presumption, to the contrary.

"Third Counter-Proposition. Even if the evidence of the slope of the floor found to exist in February and September, 1939, was admissible, its exclusion was harmless error, because:

"(a) The existence of such a slope, taken either alone or in connection with all other evidence in the record, was insufficient to raise an issue of negligence;

"(b) Assuming negligence due to a slope in the floor, appellant failed to present evidence sufficient to warrant a jury finding that Mrs. Callison's fall was proximately caused thereby; and

"(c) The floor was plainly visible, its condition was open and obvious, and Mrs. Callison assumed the risk and dangers, if any, in using the same.

"Fourth Counter-Proposition. The trial court properly instructed a verdict for appellees, because under the undisputed evidence Mrs. Callison was a trespasser, or at most a licensee, at the time and place that she sustained her injuries, so that appellees owed her no duty of maintaining the premises in safe condition and Mrs. Callison accepted the risk of using the premises in the condition in which she found them.

"Fifth Counter-Proposition. The undisputed evidence shows that W. S. Red, Jr., as tenant of S. C. Red, owed the duty of keeping up the offices, including the cleaning and polishing of the floor where Mrs. Callison fell, so that W. S. Red, Jr., could not have recovered from S. C. Red for an injury caused W. S. Red., Jr., by the condition of the floor. As Mrs. Callison was solely the invitee of W. S. Red, Jr., if an invitee at all, the trial court properly instructed a verdict in favor of S. C. Red, because an invitee of a tenant could have no greater right against the owner of the premises than the tenant would have."

These respective statements have been contrasted for this reason: Appellant's quoted propositions, in effect, make two contentions: (1) That the testimony of appellant's wife, Robert B. Taylor, the two appellees, and Kaster Colbert, raised issues of negligence, in that it reflected that "the floor was in a slippery condition and was oily and slippery at the time Mrs. Callison fell on July 15, 1938"; and (2) the excluded testimony of the witnesses Robert B. Taylor and A. E. King, to the effect that the floors were uneven when examined by one of them, each, on the respective dates of February 4 and in September of 1939, was admissible as tending to show the same condition to have existed on July 19 of 1938, especially when Dr. S. C. Red, the owner of the property testified there had been no change of condition in the floor between those several dates.

This court, however, after careful consideration of the record, is unable to agree either with appellant's stated assumptions of fact, or his conclusion of law that he draws therefrom; that is, as it reads the statement of facts, there is no testimony showing or reasonably tending to show that the floor was in a "slippery condition", or was "oily and slippery", at the specified time Mrs. Callison testified she fell upon it; indeed, Mrs. Callison herself did not so testify, her own version being the other way from "oily and slippery", when she merely stated that the floor seemed to her at the time to be "a little rough"; nor did any other witness testify that it was "slippery", or "oily and slippery", or to any other facts from which that was a legitimate inference; indeed, the only testimony in that field was that eleven days before July 15 of 1938 the floor, which was of hardwood, had been polished with Johnson's floor wax in the usual manner, and for that eleven days had been walked on by many people, none of whom had been shown either to have slipped up or noted any unusual condition upon the floor.

■ It would serve no useful purpose to recapitulate the testimony upon this feature of the cause, it being sufficient to find that appellant's assumption of there having been such a "slippery and oily condition" at the time Mrs. Callison fell is without support in this record; hence his propositions of law upon such a premise, as well as his citation in support thereof of such authorities as Brockman v. J. Weingarten, Inc., Tex.Civ.App., 115 S.W.2d 753, af-

firmed 134 Tex. 451, 135 S.W.2d 698; Hohlt Co. v. Routt, Tex.Civ.App., 48 S.W.2d 386; Campbell v. F. W. Woolworth Co., Tex.Civ. App., 16 S.W.2d 907; Kress & Co. v. Dyer, Tex.Civ.App., 49 S.W.2d 986; Berwald v. Turner, Tex.Civ.App., 52 S.W.2d 112; Gordon v. McIntosh, Tex.Civ.App., 54 S.W. 2d 177; Kress & Co. v. Jennings, Tex.Civ. App., 64 S.W.2d 1074; Harsha v. Renfro Drug Co., Tex.Civ.App., 77 S.W.2d 584; Renfro Drug Co. v. Jackson, Tex.Civ.App., 81 S.W.2d 101; Alamo National Bank v. Hazlitt, Tex.Civ.App., 92 S.W.2d 315; and New St. Anthony Hotel Co. v. Pryor, Tex. Civ.App., 132 S.W.2d 620, are not applicable here.

In each and all of those cases there was either direct or admissible circumstantial proof to the effect that the fall had been attributable to some foreign substance on the floor, as to which there is a complete hiatus in this instance; no such dangerous foreign substance was upon this floor at the time involved, except the wax polish referred to, which, even Mrs. Callison herself said, you would expect on such a hardwood floor as it was, otherwise "a floor may be badly scarred if you don't put wax on it."

So that, the factual premise of appellant's contention that an issue of negligence was so raised here being untenable, and the ultimate purport of the testimony as a whole being to the contrary, as indicated supra, it is held, under these authorities, that no such issue was raised; Kay v. Audet, 306 Mass. 337, 28 N.E.2d 462; Miller Bros. v. Mansfield, 3 Negligence Cases, 842; Mack v. Woman's Club, 303 Ill.App. 217, 24 N.E.2d 898; 100 A.L.R. 748.

Neither, it is thought was there reversible error in the exclusion of the quoted testimony of the witnesses, Robert B. Taylor and A. E. King to the effect that when their separate examinations of the premises were made, the former on February 4, 1939, and the latter in September of 1939, that the floors were uneven; this, for the reasons given in the appellee's counter-propositions two and three, supra. In the first place, here again the factual premise to the effect that Dr. S. C. Red, the owner of the property, had testified that there had been no change in the condition of the floors between the dates of July 15 of 1938, and February 4 and September of 1939, is likewise thought to have been mistakenly laid; on the contrary, this record seems to reflect no probative testimony that con-ditions had not changed between those periods, but a well-nigh undisputed showing that such a change had occurred, between the date of the fall and February 4 of 1939, as accounted for the slope or unevenness Mr. Taylor testified to having seen on that date.

In other words, this court finds the record upon this detail to be substantially as thus stated in the appellee's brief:

"Mrs. Callison and S. C. Red did not know whether the floors sloped in July, 1938. W. S. Red, Jr., and Kaster Colbert testified they did not slope. The proper closing of the door between the white reception room and the passageway in July, 1938, and its sticking in the winter of 1939, is conclusive proof that a change took place between those dates. The probability of such a change was accounted for by Taylor, appellant's own witness, due to the accumulation of water under the house from the overflow of a basin and two leaky pipes. It thus clearly appears that the condition had so changed by February, 1939, as not to be representative of conditions which existed on July 15, 1938."

Wherefore, since in this instance it neither affirmatively appears that there had been no change in the condition of the floors between the dates involved, nor are there presented circumstances compelling a presumption to that effect, the testimony as to a condition found at two subsequent dates to the occurrence is not admissible; especially where, as here, direct testimony to the effect that a material change had occurred, and how and why, was present. Houston & Texas Central Ry. Co. v. Waller, 56 Tex. 331, 339; Galveston, H. & S. A. Ry. Co. v. McAdams, 37 Tex.Civ.App. 575, 84 S.W. 1076, writ of error refused; 20 Am.Jur. 284; Milano v. Wasserman, 255 Mass. 1, 150 N.E. 835; Walker v. S. H. Kress & Co., 147 Kan. 48, 75 P.2d 820; Midco Oil Corp. v. Hull, 182 Okl. 21, 75 P. 2d 1126; Ilgenfritz v. Missouri Power & Light Co., 340 Mo. 648, 101 S.W.2d 723; Western Tel. Corp. v. McCann, 128 Tex. 582, 99 S.W.2d 895; Marshall v. San Jacinto Bldg., Tex.Civ.App., 67 S.W.2d 372, writ of error denied.

Further discussion is deemed unnecessary, since the conclusions stated determine the merits of the appeal. They require an affirmance of the judgment; it will be so ordered.

Affirmed.