**Oralee ENNIS, a widow, Appellant,**

**v.**

**Dr. Carl A. PETERSON, Appellee.**

**No. 15432.**

Court of Civil Appeals of Texas.

Houston (1st Dist.).

March 6, 1969.

Rehearing Denied March 27, 1969.

■■■■■■■■■

Joseph D. Jamail, Don M. Barnett, Houston, for appellant.

Butler, Binion, Rice, Cook & Knapp, Steven C. Oaks, Richard M. DeGeurin, Houston, for appellee.

PEDEN, Justice.

Appellant broke her hip when she tripped and fell at the threshold of a door as she was leaving her doctor's offices. She appeals from the trial court's having withdrawn the case from the jury and from its judgment that she recover nothing.

Appellant's first point of error is overlapped by her second point, which states tat that since she had established that Dr. Peterson's floor was defective where she fell, that the defect had existed for a long time and that it was not readily apparent to her (a business invitee), the trial court erred in withdrawing the case from the jury and in rendering a judgment that she take nothing.

Appellant's third point of error is that the trial court erred in excluding, if it did, her testimony concerning the condition of the entranceway when she later inspected it.

The two parties to the suit were the only ones who testified as to its liability aspects; each of them testified in person and by deposition. We will not review the evidence as to appellant's damages.

Dr. Peterson's deposition was taken on February 14, 1968. In it he stated that Mrs. Ennis had been in his office as a patient on December 30, 1963 and had fallen as she was leaving. She was lying on the floor when he first saw her after her fall. The floor was of asphalt tile and at the door there was a metal facing or weatherstripping bedded in the concrete with bolts.

He related that he had at that time inspected the area immediately around where she had fallen by looking "in the doorway to see if there was anything on the floor or in the door and it was just like it had always been and still is; there was nothing there at all." He had examined the asphalt tile at that time but didn't notice any cracks or pieces missing in the tile. He was asked, "And is the condition of that threshold and doorway and step today exactly as it was back there in '63?" He answered, "Exactly. Got the door painted a while back."

"Q Other than that, there have been no changes?

"A No changes at all.

"Q There hasn't been any weathering effect that's noticeable to you?

"A No. It's closed in. It is set back in from weather. There's no weather that gets to that. The entrance is, oh, six to eight feet wide and five feet deep. You step up, come in the entranceway and open the door and come in. So it is well protected from the outside.

"Q The surface area, the step and the metal strip and, in fact, the tile just inside that metal strip, they are all smooth as the day they were put there or, at least, as they have been for years?

"A Yes, as far as I know. Unless there's been some wear and tear on it since '63 that I don't particularly know of, it's just like it's always been.

"Q At least there was nothing there at the time that you saw that you thought would need repairs?

"A No, I didn't see anything. Certainly there was nothing repaired. There was nothing to repair.

"Q And you looked to see if there was, is that your testimony?

"A That's right."

When called to the witness stand, Dr. Peterson repeated his deposition testimony

that he had inspected the threshold area just after Mrs. Ennis' fall. He found nothing to give him any cause to believe anything was wrong; the walkway and entranceway were the same as they had been all the years he had been there. Also, that the entranceway, the concrete or tile and the weatherstripping are the same today as when Mrs. Ennis fell and the same as they had been for a long time before that.

Mrs. Ennis testified in person that as she was leaving Dr. Peterson's waiting room after having seen him on December 30, 1963, something caught the heel of her left shoe briefly and she was hurled down onto the vestibule floor, breaking her right hip. When asked what caused her to fall, she replied, "I know now what caused me to fall." She explained that the floor is covered with asphalt tile and that there is a strip of metal across the doorway; along the edge of the metal the "tile has worn away in a narrow and irregular strip so that it has left the inner edge of that metal strip more exposed in spots." She said that her left heel caught on that and caused her to fall but that as she had approached the door the floor and threshold had appeared to be normal. She was asked if she was saying there was something wrong with the doorway area then. Her reply was, "Yes, I am. The doorway area is in bad condition." Appellee's counsel said, "I object to that as a conclusion." The objection was sustained. Then the trial judge instructed the jury not to consider for any purpose whatsoever in arriving at its verdict any statement by the witness that there was something wrong with the doorway and asked Mrs. Ennis not to express any conclusions or opinions.

She related that it was the inner front corner of the right side of the heel of the left shoe that got caught in the doorway. The heels had been repaired earlier that day and were completely smooth.

Mrs. Ennis said she had not noticed anything that could have caused her to fall until she had gone back to Dr. Peterson's office a few days before the trial because she knew there was something there that caused her to fall. She found a "bare, slightly irregular strip on the inner side of the metal strip, the strip of floor which is at intervals bare because the tile has been worn and *broken* away." (Emphasis added.) Some of the tile is missing along there in a very narrow, irregular stretch."

The trial court sustained an objection by appellee's counsel to the next question, which had inquired as to what she had done in order to see this condition. The objection was based on appellant's observation having been made some five years after the date of the accident and on a lack of showing that the tile was in that condition at the time of the alleged accident.

Mrs. Ennis then testified that at the time of her fall she knew her heel had caught. It had caught on the metal stripping across the doorway.

On cross-examination she stated that she had visited appellee's offices many times as a patient since about 1954 or 1955 and that from that time until the time of her accident she had not, in general, noticed any change in the interior of the office, the steps or the weatherstripping. She testified that the inside corner of the heel of her left shoe (it was in evidence) had definitely been pulled away in the accident.

Her attention was called to her testimony in her deposition taken on September 13, 1967 (some nine months prior to the trial), at which time she said she did not know what her heel caught in, and she still did not "personally" know what her heel caught in.

On the witness stand she then stated that it was after her inspection of the threshold about a week before the trial that she first determined that her heel had caught on the weatherstripping; its edge was uncovered to a point where something could catch on it, as she found on the eve of trial. Her recent visit to appellee's office was her first since the accident.

She was asked to describe what that doorway looked like. Appellee's attorney stated, "I object to it if she is going to testify that the doorway was in the same condition it was at the time of the accident." This objection was sustained, the court adding that it was irrelevant and immaterial as to what the doorway looked like five years after the accident.

Dr. Peterson was again called as a witness, and he testified that between 1951 and the date of the trial there had been no material changes other than wear and tear. Also, that from the date of the accident to the date of the trial the condition of the doorway had remained the same except for normal wear. He further testified that between 1951 and the date of the accident he did not replace any of the asphalt tiles at the threshold and that he has not noticed any wear on the edge of the tile adjacent to the threshold. He stated that after Mrs. Ennis' fall he examined the tile and there was no change in its condition that he could see and recall. He was then asked whether the asphalt tile at the edge of the weatherstrip was whole "today". An objection stating that the question was irrelevant was sustained. The trial court said to let the witness answer it for the purpose of a bill of exception. The answer given was that there are now some cracks at the edge in one or two places. That there are several areas where the tile has chipped. This testimony, taken for purposes of a bill of exception, was not offered in evidence.

◼ In considering appellant's second point, which complains of the trial court's having withdrawn the case from the jury, we must accept the evidence and the inferences to be drawn from it in their aspects most favorable to her case and discard all contrary evidence and inferences. Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60 (1953).

◼ It is uncontroverted that appellant was a business invitee on appellee's premises when she was injured. Therefore, he had a duty to inspect the premises and to protect her from any danger of which he knew, or of which he should have known in the exercise of ordinary care, and if such danger was not open and obvious, he was under a duty to take such precautions as a reasonably prudent person would have taken to protect her or to warn her of the danger. Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.Sup.1963).

◼ When we view the evidence in the light most favorable to appellant we conclude that it raises fact issues as to whether Mrs. Ennis' fall was proximately caused by a gap between the weatherstripping and some broken asphalt tile, as to whether such condition had remained substantially unchanged over a period of several years before the accident, and if so, as to whether Dr. Peterson's failure to discover such condition constituted negligence; if so, as to whether his failure to take precautions to protect or warn her was a proximate cause of her fall. There is nothing in the record to indicate that appellee did anything to protect or warn appellant of the condition of the threshold.

◼ As appellant's third point indicates, it is not entirely clear from the record whether the trial court excluded her testimony concerning the condition of the entranceway when she inspected it some four and a half years after her fall. We overrule this point, because we have determined that not all of such testimony was excluded. Some of her testimony on this subject was not objected to, nor was the court asked to order it stricken from the record. As noted, the trial judge did instruct the jury not to consider any statement by her that there was something wrong with the doorway, but we believe such instruction referred only to the previous question as to whether there was something wrong with the doorway. The trial court later observed that it was irrelevant and immaterial as to what the doorway looked like five years

# 678

after the accident. In view of the testimony in the instant trial as to lack of material change in conditions, we believe that if this case is tried again, the admissibility of the evidence on this point should be considered in the light of the discussion found at 23 Tex.Jur.2d 181, Evidence, § 125, and the holding in H. & T. C. Railway Co. v. Waller, 56 Tex. 331 (1882), in which case testimony was admitted bearing on the sufficiency of the lighting on an engine and about a railroad platform near which a pedestrain had been struck by a train at night. Such testimony related to what a witness had observed on a similar night some two years after the accident. There was other evidence indicating that the lighting had been changed in the meantime. The Supreme Court held that if the arrangement of the lights and other surroundings were substantially the same when examined two years later as on the night of the accident, there was no reason to exclude the evidence, but that if the circumstances had been materially altered, testimony as to what the witnesses saw after this alteration would not be relevant or admissible. In the conflict of evidence which it found, the Supreme Court was not of the opinion that the testimony should have been excluded. See also Galveston, H. & S. A. Railway Co. v. McAdams, 37 Tex.Civ.App. 575, 84 S.W. 1076 (San Antonio Civ.App.1905, writ refused); Callison v. Red, 149 S.W.2d 153 (Galveston Tex. Civ.App.1941, no writ); Gulf, C. & S. F. Railway So. v. Fowler, 57 Tex.Civ.App. 556, 122 S.W. 593 (San Antonio Civ.App. 1909, no writ), and Westinghouse Electric Elevator Co. v. Hatcher, 133 F.2d 109 (5th Cir. 1943).

Appellant's fourth point complains of the exclusion of certain hospital records. Our ruling on this point would not affect the outcome of this appeal. The error, if any, was harmless.

The judgment of the Trial Court is reversed and this cause is remanded for a new trial.